THOMAS SCHROECK, HENRIETTA SCHROECK, CHARLES HOLLENBACH, CARRIE S. HOLLENBACH, HENRY MILLER AND ANDREW WARZOCAJ, RELATORS, v. J. M. QUINBY & COMPANY, A CORPORTION (FORMERLY KNOWN AS JEPHSON SCOTT BODY COMPANY, INCORPORATED), AND RICHARD H. LONG, RESPONDENTS.

Argued January 21, 1926—Decided July 14, 1926.

1. A writ of *mandamus* to obtain an inspection of corporate books and papers will not be granted to stockholders to gratify their curiosity or to further ulterior motives. It will only be granted when the application is made in good faith.
2. The demand for an inspection and examination of corporate books and papers must not be in its terms broader than the rights of the stockholders.
3. A reasonable time must be given to the corporation to comply with the demand before proceedings for inspection and examination are made to the court.

On rule to show cause why a peremptory or alternative writ of *mandamus* should not issue.

Before Justices TRENCHARD, KATZENBACH and LLOYD.

For the relators, *Israel B. Greene.*

For the defendants, *McCarter & English* (*Conover English,* of counsel).

The opinion of the court was delivered by

KATZENBACH, J. This is an application for a peremptory or alternative writ of *mandamus.* The relators are stockholders of J. M. Quinby & Company, a New Jersey corporation. The application is for the purpose of obtaining an inspection and examination for themselves, their attorneys and accountants, of all the books, records and papers of the corporation. The president of the corporation, Richard H.

Long, is also a respondent. Under the rule to show cause, which was allowed upon the relator's application, leave was given to take affidavits. Affidavits were taken and form a part of the record. The record also contains the affidavits upon which the rule was allowed. These affidavits form no part of the record. They should not have been printed. *Baldwin* v. *Flagg,* 43 *N. J. L.* 495.

The application is made under section 44 of the act entitled "An act concerning corporations" (Revision of 1896). Under section 41 of the same act the calling of a stockholders' meeting is sought. After the allowance of the rule a stockholders' meeting was called and the purposes for which it was desired were accomplished.

The respondent J. M. Quinby & Company, in April, 1923, succeeded to a long-established and favorably-known business. The business was the building and repair of automobile bodies. The corporation was promoted by another corporation known as Long, Kay & Company, which conducted a brokerage business. The principal stockholders of Long, Kay & Company were Richard H. Long, who is now the president of the J. M. Quinby & Company, and Ernest Kay, a former director and treasurer of J. M. Quinby & Company. The capital stock of J. M. Quinby & Company, which consisted of preferred capital stock to the amount of $200,000 and sixteen thousand two hundred and fifty shares of common stock of no par value, was sold by Long, Kay & Company. One share of preferred stock and one share of common stock were sold for $125. Long, Kay & Company retained $40 for its commission and $85 found its way into the treasury of J. M. Quinby & Company. The relators, who are six in number, each own one share of preferred stock and one share of common stock.

Counsel for the relators stresses what he alleges were misrepresentations made to the relators as to the value of the stock at the time of purchase. Some of the relators allege that representations were made that the Fidelity Union Trust Company, a responsible banking institution, had guaranteed the payment of an eight per cent. dividend on the preferred

capital stock. This feature of the case has no relèvancy to the application. Any remedy which the relators may have in this regard would be against the parties who had made the misrepresentations.

The business conducted by the corporation was not successful. Its volume of business decreased. The working force was greatly reduced. Then Richard H. Long, one of the respondents and the same person who was connected with the corporation of Long, Kay & Company, was elected president of J. M. Quinby & Company. After his induction into office the business of the corporation improved. At the time of the present application the output of the company had increased to about twenty-five per cent. of the capacity of its plant.

The right of a stockholder to inspect the books of a corporation, where the application is made in good faith, has been affirmed in many cases in this state. *Rosenfeld* v. *Einstein,* 46 *N. J. L.* 479; *In re DeVengoechea,* 86 *Id.* 35; *Feick* v. *Hill Bread Co.,* 91 *Id.* 486; *affirmed,* 92 *Id.* 513. As, however, the issuance of a writ of *mandamus* is discretionary, it must appear that the application is made in good faith, and that no improper motive influences the stockholders in making the application. The writ is not granted to gratify curiosity or to further ulterior motives. It is only granted when its exercise is sought in good faith and for a specific purpose. *Bruning* v. *Hoboken Printing Co.,* 67 *Id.* 119. Before an application is made there must have been a demand and a refusal for the inspection and examination. The demand must not be in terms broader than the stockholders' right. Applying these principles to the facts of the present case, as each case must be decided upon its special facts, we have reached the conclusion that the relators are not entitled to the writ they ask for.

In the first place, the demand made by counsel for the relators was too broad. It reads as follows: "On behalf of the above-named clients of mine I hereby demand that immediately upon the receipt of this letter you send to me copies of your financial statements for 1923, 1924 and 1925,

together with detailed statements of operations showing profits or losses and sources and origin thereof, and that in addition thereto you submit all of your books, records and papers, together with all documents of title, relating to the affairs of the company, to my client, so that with my aid or the aid of proper certified accountants they may make proper inspection and investigation of the same, and that immediately upon receipt of this letter you convene a meeting of stockholders for the purpose of electing a new board of directors."

The letter concluded with the statement that an application for a writ, if the demand was not complied with, would be made within five days. This demand would have allowed the relators, who held a very small number of shares of the capital stock of the corporation, untrammeled access to all the books, records and papers within the control of the corporation. A corporation is not obliged to permit such unrestricted access to its books, records, papers, documents, &c. *Rosenfeld* v. *Einstein, supra.*

In the second place, there is insufficient evidence that the corporation refused to comply with any reasonable demand of the relators. In answer to the demand above mentioned the corporation replied that it had no desire to withhold proper information, and asked what specific information was desired. Counsel for the relators in answer to this inquiry wrote on November 5th, 1925, a letter in which he stated that his clients desired an inspection and examination of the books for the purpose of determining—

(a) The true value of their stockholdings.

(b) Whether the company has been and is now being operated profitably.

(c) Why no dividends have been paid in three years.

(d) Why no annual meeting of stockholders has been held in several years, and, if such a meeting was held, why they received no notice thereof.

This letter was probably received on November 6th, 1925, if sent by mail. On the following day, November 7th, application was made for the rule. While expedition in the in-

terest of a client should generally be commended, yet in the present case we feel that the application was made too expeditiously. The corporation was entitled to at least a reasonable time to reply to the letter of November 5th, 1925.

The cases hereinbefore mentioned hold that stockholders, who ask for an inspection and examination of the books and papers of a corporation, must have no improper motive in the making of the application. The testimony taken shows that one of the stockholders joining in the application desires the corporation to buy his stock. Others say that they either want to be paid dividends upon their shares or sell them (presumably to the corporation). This testimony leads us to the conclusion that the real purpose of the application is not to obtain an inspection and examination of the books, but to dispose advantageously of their shares. If we are mistaken in this conclusion it is a sufficient answer to the application to say that the information which was asked for in the letter of November 5th, 1925, has been obtained by the relators since the granting of the rule. Financial statements of the condition of the corporation have been sent to all of the stockholders. Full information as to the general financial condition of the corporation was likewise obtained from the cross-examination of Mr. Long in the present proceeding. From this testimony the true value of the relator's stock can be determined as well, if not better, than by an examination and inspection of the books, &c., of the corporation. The testimony further shows that the corporation has not been operating profitably. It necessarily follows that this is the reason why no dividends for the past three years have been paid. Since the issue of the rule to show cause an annual meeting of the stockholders has been held. This was held on November 27th, 1925. It was well attended. Financial reports were made. Information as to the condition of the corporation was given to the stockholders. New directors were elected.

We have reached the conclusion that the relators are not entitled to the *mandamus* asked for. The rule to show cause is, accordingly, discharged.