71 A.3d 749

612 ASSOCIATES, L.L.C., PLAINTIFF, v. NORTH BERGEN MUNIC-
IPAL UTILITIES AUTHORITY, DEFENDANT–RESPONDENT,
v. NORTH HUDSON REGIONAL SEWER AUTHORITY, DEFEN-
DANT–APPELLANT, AND NEW JERSEY DEPARTMENT OF
ENVIRONMENTAL PROTECTION, DEFENDANT.

Argued October 22, 2012—Decided March 7, 2013.

4

*Alan L. Zegas* argued the cause for appellant (*Mr. Zegas* and *Leanza & Agrapidis*, attorneys; *Mr. Zegas, Judson L. Hand,* and *Frank Covello,* on the briefs).

*William J. Conway* argued the cause for respondent (*Johnson & Conway,* attorneys).

*E. Neal Zimmermann* argued the cause for amicus curiae Bergen County Utilities Authority (*Waters, McPherson, McNeill,* attorneys; *Laurence R. Maddock,* on the brief).

*Debra J. Surgan* submitted a brief on behalf of amicus curiae Warren Township Sewerage Authority (*Post, Polak, Goodsell, MacNeill & Strauchler,* attorneys; *Robert A. Goodsell,* of counsel).

*Paul H. Schneider* submitted a brief on behalf of amicus curiae New Jersey Builders Association (*Giordano, Halleran & Ciesla,* attorneys).

Justice HOENS delivered the opinion of the Court.

Our Legislature has long expressed its view that it is in the public interest to protect our water and, in furtherance of that public interest, it has acted to promote the safety of our water supply in a variety of ways. One of the ways in which our Legislature has given voice to this strong public policy concern has been through the enactment of statutes that "reduce and ultimately abate the menace to public health resulting from ... [water] pollution" by regulating the "collection, treatment, purification [and] disposal of sewage[.]" *N.J.S.A.* 40:14A–2; *see N.J.S.A.* 40:14B–2. As part of the way in which it has addressed these important concerns, the Legislature has provided for the creation of two kinds of independent entities. Called Sewerage Authorities and Municipal Utilities Authorities, they are governed by the Sewerage Authorities Law, *N.J.S.A.* 40:14A–1 to –45, and the Municipal and County Utilities Authorities Law, *N.J.S.A.* 40:14B–1 to –78, respectively.

Part of the overall statutory scheme grants permission to these authorities to charge users a variety of fees in connection with the sewerage services that they provide. Although some of these fees are based on the services that are actually provided, one of the charges, variously called the connection fee or the tapping fee, is intended to assist the authorities to defray the capital costs

involved in building the sewage collection and treatment systems themselves.

This appeal centers on a dispute between two of these authorities about which of them is entitled to collect the connection fee when one of them provides the initial physical connection to a condominium development and transports the waste for a short distance, but when the other actually treats the sewage at its nearby treatment facility. The solution to this dispute requires us to analyze the provisions governing connection fees that are found in the Sewerage Authorities Law, *N.J.S.A.* 40:14A–8, and the Municipal and County Utilities Authorities Law, *N.J.S.A.* 40:14B–22.

I.

Plaintiff 612 Associates, L.L.C. owned a large parcel of land in Union City which was situated approximately 300 to 500 feet away from that municipality's border with North Bergen Township. In 2007, plaintiff was in the process of constructing a fifty-two unit condominium complex on the property and needed to connect with a sewerage system in order to dispose of its anticipated sewer flows.

According to plaintiff, its property is located at the "high point of the area." As a result, the sewage generated by the complex either could flow westward to the North Bergen Treatment Plant, which is operated by defendant North Bergen Municipal Utilities Authority (North Bergen MUA), or it could flow southeastward to the North Hudson Regional Sewage Plant, which is operated by defendant North Hudson Sewerage Authority (North Hudson SA). Because of the topography of the site, gravity would naturally cause the sewage to flow along the westward path, so plaintiff completed a treatment work application with North Bergen MUA for treatment of the project's sewage.

Although the sewage was going to be treated at the North Bergen MUA treatment facility, the property's location in Union City required that the complex be connected to sewer lines that were located in Union City and that were owned by North Hudson

SA. From the point of that connection, the sewage would flow through the North Hudson SA pipeline for approximately 300 feet until reaching the sewer lines owned by North Bergen MUA which would then transport it to the North Bergen MUA treatment plant. Plaintiff estimated that approximately ninety-five percent of the lines through which the property's sewage travels are physically located in North Bergen and are owned by the North Bergen MUA.

During construction of the complex, plaintiff became aware that a dispute had arisen between North Bergen MUA and North Hudson SA concerning which of the authorities was entitled to collect the statutorily-authorized connection fee. That is, after the property was connected to Union City's sewer lines, both North Hudson SA, relying on the statute governing sewerage authorities, *N.J.S.A.* 40:14A–8, and North Bergen MUA, relying on the statute governing municipal utilities authorities, *N.J.S.A.* 40:14B–22, claimed to be entitled to collect a connection fee from the project's owner.

In its effort to resolve the dispute, plaintiff filed a complaint and Order to Show Cause against North Hudson SA, North Bergen MUA, and the New Jersey Department of Environmental Protection (DEP). In that complaint, plaintiff sought the court's assistance in resolving the dispute about which of the two authorities was entitled to be paid a connection fee. At the same time, in an effort to avoid being forced to pay duplicative fees, plaintiff requested permission to deposit the sum representing the connection fee into an escrow account.

Shortly after the return date of the Order to Show Cause, the parties entered into a consent order pursuant to which the DEP was dismissed as a party and the matter was essentially transformed into an interpleader action. *See R.* 4:31. That is, plaintiff submitted completed treatment work applications to both authorities and agreed to deposit into an escrow account the sum of $157,129, which represented North Hudson SA's connection fee of $153,655, together with application and review fees. As a result, North Hudson SA and North Bergen MUA were left to litigate

their dispute about which authority was entitled to collect the disputed connection fee.

The parties submitted briefs to the court in which each asserted that it was entitled to the connection fee. North Hudson SA argued that because the property was directly connected to its lines and because it was therefore the exclusive connection and collection point, the governing statute required that it be awarded the fee. North Bergen MUA asserted that because the sewage was ultimately treated in its treatment facility, it was entitled to collect the fee.

In January 2008, the trial court rendered an oral decision agreeing with North Hudson SA based on a comparative analysis of the statutory language authorizing connection fees and that which allowed authorities to charge service fees. In undertaking that analysis, the trial court observed that the statute expressly permitted a service fee to be imposed based on either a direct or indirect connection to the system, but that it only referred to connection fees "in respect of each connection of any property with the sewerage system." *Compare N.J.S.A.* 40:14A–8(a), *with N.J.S.A.* 40:14A–8(b). The court reasoned that the difference in language was significant and that the use of the phrase "direct or indirect" when referring to service fees, coupled with its absence in the section relating to connection fees, meant that a connection fee was permitted only when the property had a direct connection to a sewerage system.

North Bergen MUA appealed the 2008 order of the trial court awarding the connection fee to North Hudson SA. In summary, it argued that the trial court's analysis overlooked the underlying purpose of the statutory permission to impose connection fees. Asserting that the purpose of the fee is to permit the authorities to recoup the capital costs of building the collection and treatment systems, North Bergen MUA argued that the trial court's opinion failed to advance that goal.

The position taken by North Bergen MUA on appeal was supported by amicus curiae Bergen County Utilities Authority,

which asserted that because of the property's location, the role played by the two competing authorities presented the court with an atypical situation. It pointed out that ordinarily, a municipality operates a collection system and uses a regional or county authority to provide sewage treatment, but that in this case, both entities operate collection and treatment facilities. Although the waste is collected through the direct connection to the North Hudson SA system, it is not treated at that entity's treatment facility, but instead is diverted to the North Bergen MUA facility. Because of this unusual configuration, amicus curiae suggested that the Appellate Division should intervene and direct that the fee be split between the parties to further the purpose of the governing statutes.

In a published opinion, the Appellate Division reversed the trial court's decision and held that both entities were entitled to charge connection fees. *612 Assocs., L.L.C. v. No. Bergen MUA*, 404 *N.J.Super.* 531, 539–41, 962 *A.*2d 602 (App.Div.2009). Because the parties had entered into the consent order that allowed the property owner to pay the fee into escrow and that permitted the matter to proceed as an interpleader, however, the appellate panel concluded that no further fee could be imposed on plaintiff. *Id.* at 541, 962 *A.*2d 602. The appellate court therefore remanded the matter to the trial court with instructions that it devise a method to fairly apportion the escrowed sum between the two entities. *Ibid.*

In February 2009, North Hudson SA filed a petition for certification with this Court. Included as a part of the petition's supporting appendix, North Hudson SA provided this Court with information that had not been presented to the trial or appellate courts. That information suggested that the two authorities had entered into an agreement that governed which of them would collect a connection fee when the project was located in the area where plaintiff built the condominiums.

We granted the petition for certification, 199 *N.J.* 540, 973 *A.*2d 944 (2009), granted leave to supplement the record with the

information contained in the supporting appendix, granted leave to North Warren Township Sewerage Authority to appear as an amicus curiae, and remanded the matter to the Appellate Division to consider the implications of the supplemental information. The Appellate Division remanded the matter to the trial court with instructions that it conduct an evidentiary hearing and that it make findings of fact concerning the assertion that the parties had entered into a contract.

Following an evidentiary hearing, the specifics of which are not germane to the issue before this Court, the trial court concluded that North Bergen MUA and North Hudson SA had never entered into an agreement regarding sewer connection fees. Proceeding to the question originally remanded, that is, the allocation of the connection fee as between the two entities, the trial court created a formula that applied a pro rata allocation of the agreed-upon escrowed fee based on an adjusted, non-duplicative fee that the court concluded each entity should have charged had they both been permitted to collect their fee. The trial court's October 4, 2010, decision and order concluded that North Hudson SA was entitled to 27.1 percent of the escrowed amount, or $41,641, and that North Bergen MUA was entitled to 72.9 percent of the escrowed amount, which was calculated to be $112,014.

North Hudson SA thereafter moved before the Appellate Division, seeking reconsideration of its earlier published opinion. In an unpublished opinion, the Appellate Division affirmed the finding of the trial court that the agreement between the entities did not govern the dispute over connection fees, declined to reconsider its earlier decision that the appropriate remedy under the circumstances was an equitable apportionment between the two authorities of the fee paid into escrow, and left the methodology used by the trial court undisturbed.

## II.

North Hudson SA filed its second petition for certification, which this Court granted. 208 *N.J.* 367, 29 *A.*3d 740 (2011). We

thereafter granted leave to the New Jersey Builders Association and the Bergen County Utilities Authority to join the Warren Township Sewerage Authority as amici curiae. The arguments of the parties before this Court mirror the positions that have been taken during the litigation before the trial and appellate courts.

North Hudson SA argues that the trial court's original statutory interpretation concluding that the connection fee was limited to a direct connection was correct and that it therefore is entitled to the entire connection fee that plaintiff placed in escrow. Moreover, North Hudson SA argues that the relevant statutes provide ample opportunity for an entity like North Bergen MUA, which lacks a direct connection to a property but treats its sewage, to recover a portion of its capital costs. It asserts that the indirectly-connected authority is permitted to recoup a portion of capital costs through a service charge or through a contractual agreement with the authority that has the direct connection and is entitled to the connection fee, *see N.J.S.A.* 40:14A–23 (governing contractual relationships for services with sewerage authorities); *N.J.S.A.* 40:14B–49 (governing contractual relationships for services with municipal utilities authorities), but that North Bergen MUA did not elect to do so. Finally, North Hudson SA argues that the statutory framework does not provide a methodology for apportioning a connection fee between multiple authorities, and asserts that the solution crafted by the trial and appellate courts will lead to confusion and will give rise to results contrary to the mandate of the governing statutes.

North Bergen MUA essentially adopts the arguments presented by amicus Bergen County Utilities Authority. In addition, it argues that North Hudson SA's appeal from the trial court's October 4, 2010, decision is untimely, *see R.* 2:4–1(a), and urges this Court to affirm the Appellate Division's January 21, 2009, decision, which held that each authority was permitted to collect a connection fee and which directed that the stipulated connection fee be apportioned fairly.

Amicus Bergen County Utilities Authority asserts that the statutory language, *see N.J.S.A.* 40:14A-8,:14B-22, permits a connection fee to be imposed for each connection, direct or indirect, and urges us to conclude that the language is not susceptible to any interpretation other than the one the Appellate Division reached. It argues that North Hudson SA would reap an "unfair windfall" if it were allowed to collect its entire connection fee for sewage that it does not treat and that flows through its sewer lines for only 300 feet. Turning to the apportionment issue, amicus Bergen County Utilities Authority maintains that the trial court's decision did not exceed the scope of its authority, prevented plaintiff from being forced to pay for the cost of the North Hudson SA treatment plant which its property does not use, and provided a mechanism that permitted North Bergen MUA to receive an appropriate contribution for the cost of the sewer lines and treatment plant that the property does use.

Amicus Warren Township Sewerage Authority supports North Bergen MUA's position that both authorities should be permitted to collect connection fees from users. It asserts that as long as each connection fee is properly calculated, the fees will be non-duplicative and consistent with the statutory scheme. Turning to the issue of apportionment, amicus Warren Township Sewerage Authority argues that the trial court's methodology, although perhaps an equitable solution in the abstract, was inconsistent with the statutory formula. Instead, it argues that because each authority should have been permitted to impose its entire connection fee, the trial court should have used a purely pro rata apportionment in place of the calculation that the court crafted.

Amicus New Jersey Builders Association argues that the Appellate Division appropriately affirmed the trial court's apportionment determination. It first observes that the underlying purpose of the connection fee is to contribute to the debt service of the original construction, but urges this Court to ensure that any assessed connection fee be non-duplicative. It argues that if a local municipality without a treatment facility collects sewage and

then transports it to a connection with a regional or county authority's sewer lines for eventual treatment, it is both permissible and non-duplicative for each entity, the collecting authority and the treating authority, to collect its connection fee in full. It argues that in contrast, when one entity, which has its own treatment system, only collects sewage that is ultimately transported to and treated by another authority, both entities cannot be permitted to collect their full statutorily-permitted connection fees because that would defy the principle requiring users to share fairly in capital costs of the system from which they derive a benefit. Finally, it suggests that we could resolve the dispute if we were to consider plaintiff to be a different class of user as compared to a property which has all of its sewage collected and treated solely by one entity. It argues that this approach would ensure that the apportionment methodology will comply with the statutory command for uniformity of connection fees within each class of users.

## III.

These divergent positions among the parties and the amici call upon this Court to first determine the meaning and intent of the statutes governing connection fees and then to decide whether, in the context of the interpleader action, the trial and appellate courts erred in fashioning an allocation methodology to divide the previously-agreed upon escrow amount as between the two interested entities.

## A.

Because our task involves an analysis of the Legislature's meaning and intent as revealed in the statutes that govern the imposition of fees by the sewerage and municipal utilities authorities, we recite briefly the familiar and well-settled principles of statutory construction that inform our task.

 This Court's role, in interpreting a statute, "is to determine and effectuate the Legislature's intent." *Bosland v. Warnock Dodge, Inc.,* 197 *N.J.* 543, 553, 964 *A.*2d 741 (2009). To ascertain the Legislature's intent, this Court "look[s] first to the plain language of the statute, seeking further guidance only to the extent that the Legislature's intent cannot be derived from the words that it has chosen." *Pizzullo v. N.J. Mfrs. Ins. Co.,* 196 *N.J.* 251, 264, 952 *A.*2d 1077 (2008). The words chosen by the Legislature are given their plain meanings, "unless the Legislature has used technical terms, or terms of art, which are construed 'in accordance with those meanings.'" *Marino v. Marino,* 200 *N.J.* 315, 329, 981 *A.*2d 855 (2009) (quoting *In re Lead Paint Litig.,* 191 *N.J.* 405, 430, 924 *A.*2d 484 (2007)).

 "If the language is plain and if its meaning is clear, we do not rewrite it, nor do we 'presume that the Legislature intended something other than that expressed by way of the plain language.'" *Hubner v. Spring Valley Equestr. Ctr.,* 203 *N.J.* 184, 194, 1 *A.*3d 618 (2010) (quoting *O'Connell v. State,* 171 *N.J.* 484, 488, 795 *A.*2d 857 (2002)). If, however, the language of the statute does not make the intent of the Legislature plain, but instead is "susceptible to more than one meaning or interpretation, courts may look to extrinsic secondary sources," including the statute's legislative history. *Ibid.* (quoting *Marino, supra,* 200 *N.J.* at 329, 981 *A.*2d 855).

### B.

The operations of Sewerage Authorities and Municipal Utilities Authorities are governed by different statutes, and although the terms that are relevant to our analysis of the matter before this Court are virtually identical, we set forth the governing provisions of each statute for ease of reference.

The sections of the Sewerage Authority Law that govern connection fees and other charges provide as follows:

(a) Every sewerage authority is hereby authorized to charge and collect rents, rates, fees or other charges (in this act sometimes referred to as "service charges")

for direct or indirect connection with, or the use or services of, the sewerage system. Such service charges may be charged to and collected from any person contracting for such connection or use or services or from the owner or occupant, or both of them, of any real property which directly or indirectly is or has been connected with the system or from or on which originates or has originated sewage or other wastes which directly or indirectly have entered or may enter the sewerage system, and the owner of any such real property shall be liable for and shall pay such service charges to the sewerage authority at the time when and the place where such service charges are due and payable.

(b) ... In addition to any such periodic service charges, a separate charge in the nature of a connection fee or tapping fee, in respect of each connection of any property with the sewerage system, may be imposed upon the owner or occupant of the property so connected. Such connection charges shall be uniform within each class of users, except as provided by section 2 of P.L.2005, c. 29 (C.40:14A–8.3) and except as provided by section 2 of P.L.2005, c. 173 (C.40:14A–8.4), and the amount thereof shall not exceed the actual cost of the physical connection, if made by the authority, plus an amount computed in the following manner to represent a fair payment toward the cost of the system[.]

[*N.J.S.A.* 40:14A–8(a)–(b).]

Similarly, the Municipal Utility Authorities Law provides as follows:

Every municipal authority is hereby authorized to charge and collect rents, rates, fees or other charges (in this act sometimes referred to as "sewerage service charges") for direct or indirect connection with, or the use or services of, the sewerage system. Such sewerage service charges may be charged to and collected from any person contracting for such connection or use or services or from the owner or occupant, or both of them, of any real property which directly or indirectly is or has been connected with the sewerage system or from or on which originates or has originated sewage or other wastes which directly or indirectly have entered or may enter the sewerage system, and the owner of any such real property shall be liable for and shall pay such sewerage service charges to the municipal authority at the time when and place where such sewerage service charges are due and payable....

In addition to any such sewerage service charges, a separate charge in the nature of a connection fee or tapping fee, in respect of each connection of any property with the sewerage system, may be imposed upon the owner or occupant of the property so connected. Such connection charges shall be uniform within each class of users, except as provided by section 5 of P.L.2005, c. 29 (C.40:14B–22.3) and except as provided by section 5 of P.L.2005, c. 173 (C.40:14B–22.4), and the amount thereof shall not exceed the actual cost of the physical connection, if made by the authority, plus an amount computed in the following manner to represent a fair payment towards the cost of the system[.]

[*N.J.S.A.* 40:14B–22.]

The language that permits the imposition of a connection fee is not a completely independent grant of authority, but instead is included as part of the section in each of these statutes that gives broader authority to impose fees and charges. That is, each section begins with a grant of permission to impose "rents, rates, fees or other charges (in this act sometimes referred to as 'sewerage service charges') for direct or indirect connection with, or the use or services of, the sewerage system." *N.J.S.A.* 40:14A–8(a), :14B–22. Each section, after a further explanation of the nature, function, and computation of those sewerage service charges, next grants these authorities permission to impose a separate and additional charge "in the nature of a connection fee or tapping fee[.]" *N.J.S.A.* 40:14A–8(b),:14B–22. In the description of the connection fee, both of the statutes then use the phrase "each connection of any property with the sewerage system" to define the property on which that separate fee may be imposed. *N.J.S.A.* 40:14A–8(b), :14B–22. It is this language, identical in each statute, that has given rise to the dispute now before us.

North Hudson SA asserts that because the Legislature used the modifier "direct or indirect connection" when referring to the imposition of service charges, but omitted that descriptive language when authorizing the imposition of connection fees, principles of statutory construction demand that the latter be limited to direct connections only. That is, applying one of the maxims of statutory construction, North Hudson SA asserts that when the Legislature uses a qualifying phrase in one part of a statute and omits it in another part of the same statute, it must intend that the omitted language be applied only where it has been expressed. *See* Norman J. Singer, *Sutherland on Statutory Construction* § 47.23 (6th ed. 2000) (explaining meaning and intent of maxim of *expressio unius est exclusio alterius* ). North Bergen MUA, in response, cautions against over-reliance on maxims and urges us to read the language in the context of the underlying purpose that the connection fee was designed to achieve.

In evaluating the statutes that create the sewerage system and that permit the imposition of fees and charges, we are persuaded that the Legislature did not intend that the connection fee could only be imposed by the entity which owned or operated the particular lines to which any user was directly connected. We reach this conclusion for three reasons.

First, North Hudson SA relies on the maxim of *expressio unius est exclusio alterius*. We have long cautioned that this particular maxim of statutory construction "is purely interpretive in aid of intention, and [is] not a rule of law[.]" *Gangemi v. Berry*, 25 *N.J.* 1, 11, 134 *A.*2d 1 (1957); *accord Allstate Ins. Co. v. Malec*, 104 *N.J.* 1, 8, 514 *A.*2d 832 (1986); *Reilly v. Ozzard*, 33 *N.J.* 529, 539, 166 *A.*2d 360 (1960). We have explained that because it is only an interpretive aid in our quest to determine legislative intent, courts must take care in using it because "blind and mechanical application can often lead . . . to an improper interpretation of the statute being construed." *Allstate Ins. Co., supra*, 104 *N.J.* at 8, 514 *A.*2d 832 (internal quotation marks omitted). As we have described it, the "[c]anons of construction . . . must yield to the paramount canon—that of legislative intent." *Bunk v. Port Auth. of N.Y. & N.J.*, 144 *N.J.* 176, 190, 676 *A.*2d 118 (1996). Because our analysis of the statute makes the Legislature's meaning and intent clear, we need not resort to this interpretive aid.

Second, the reference to the basis on which the connection fee may be imposed, although not specifying that it applies to both direct and indirect connections, uses other descriptive words that imply inclusivity. The phrase in question permits imposition of the fee "in respect of each connection of any property with the sewerage system[.]" *N.J.S.A.* 40:14A–8(b), :14B–22. In our view, read in context, the words do not suggest that only a direct connection can support imposition of the charge. Rather, the word "each" as a modifier refers back to the preceding term "service charges" because the connection fee is imposed "[i]n addition to any such periodic service charges[.]" *N.J.S.A.* 40:14A–8(b), :14B–22. That being so, the word "each" must also necessar-

ily refer back to the broader language used in relation to the type of connection, meaning both direct and indirect, that supports the imposition of connection fees. Moreover, the phrase also refers to a connection of property "with the sewerage system." *N.J.S.A.* 40:14A–8(b), :14B–22. The word "with," again, is an inclusive one, because if the Legislature meant to limit the imposition of a connection fee only to those entities that have a direct connection to a property, the Legislature would have used the word "to" rather than the broader word that it chose, which is "with." That is to say, if the statutory provision was intended to limit connection fees to those that are based on direct connections, the Legislature would have described them as a connection of the property "to" the system, not "with" it. The latter language is more in keeping with authorization for a fee when the connection is remote or indirect.

Third, our analysis of the overall legislative intent demands that we read the statutes to permit imposition of a connection fee by authorities that have only an indirect connection with any particular property that generates sewage. The purpose of the connection fee is expressed by the Legislature as part of the description of the manner in which the connection fee is to be calculated. As the statutory language makes clear, the connection fee is based on a calculation that takes into account the cost of the connection, the capital costs of developing the system, and the debt service on loans taken and bonds issued to finance the system. More particularly, the statutes require that the connection fee be calculated by reference to "the actual cost of the physical connection, if made by the authority, plus an amount computed . . . to represent a fair payment toward the cost[s] of the system," *N.J.S.A.* 40:14A–8(b), :14B–22, which, in part, is required to include:

> [t]he amount representing all debt service, including but not limited to sinking funds, reserve funds, the principal and interest on bonds, and the amount of any loans and interest thereon, paid by the . . . authority to defray the capital cost[s] of developing the system as of the end of the immediately preceding fiscal year of the authority shall be added to all capital expenditures made by the authority not funded by a bond ordinance or debt for the development of the system as of the end of the immediately preceding fiscal year of the authority.

[*N.J.S.A.* 40:14A–8(b)(1), :14B–22a.]

■ Through these statutory requirements, the legislative intent that underlies imposition of a connection fee is made plain. The essential purpose is to permit an authority that has developed the sewage collection and treatment system to recover capital costs and related debt service associated with developing that system. It is designed to create a mechanism to permit those costs to be fairly spread across those properties that connect with and use the system. *See Airwick Indus., Inc. v. Carlstadt Sewerage Auth.,* 57 *N.J.* 107, 120, 270 *A.*2d 18 (1970).

It is significant to our understanding of the Legislature's intent that the language now used in the statute was not enacted in a vacuum. Rather, it is the Legislature's embodiment of the principles of fairness and equity that this Court set forth in our attempt to interpret the meaning of earlier versions of the statutes. Originally, because the relevant statutes were enacted at different times, the framework for fees and charges that applied to Sewerage Authorities was different from the one that applied to Municipal Utilities Authorities. Although the latter was amended in 1971 to incorporate the provisions that had previously been part of the former relating to fees and charges, *see L.* 1971, *c.* 298, § 1, neither statute specifically explained the method by which calculations were to be made.

In addressing an early challenge to connection fees, this Court recognized that service charges and connection fees served different purposes, and we established the principle requiring fairness and equality among users in contributing to the costs of the system. *Airwick, supra,* 57 *N.J.* at 121–22, 270 *A.*2d 18 (explaining meaning and intent of Sewerage Authority statute); *see White Birch Realty Corp. v. Gloucester Twp. Mun. Utils. Auth.,* 80 *N.J.* 165, 176–77, 402 *A.*2d 927 (1979) (extending *Airwick* principles to Municipal Utilities Authority statute). We applied that analysis in concluding that a sewerage authority could not create a schedule of connection fees that was designed to exact higher fees from developers and that "exceed[ed] a reasonably proportionate, equi-

table and uniform share to be borne by the respective houses in its subdivision." *S.S. & O. Corp. v. Twp. of Bernards Sewerage Auth.*, 62 *N.J.* 369, 385, 301 *A.*2d 738 (1973).

In 1985, the Legislature amended the two statutes, adopting the language now included that identifies the general methodology by which connection fees are calculated. *See L.* 1985, *c.* 526. As part of the explanation of the purpose and intent of the amendment, the Sponsor's Statement observed that the bill's

uniform formula follows the direction of the courts of this State that authorities may include, as part of a connection fee, an amount to represent a fair contribution by the connection party toward the capital costs of the system met theretofore by users of the system, but that the connection fees shall be uniform within each class of users.

[Sponsor's Statement, *Statement to Senate Bill No. 1487* (Apr. 30, 1984).]

The Committee Statement was more explicit in identifying the sources of the impetus for the amendment, referring to the "direction of the courts" as having been "handed down" in *Airwick, White Birch,* and an unpublished decision of the Appellate Division. *See* Senate County and Municipal Government Committee, *Statement to Senate Bill No. 1487* (Sept. 13, 1984). This clear expression of the Legislature's intention reinforces our understanding that connection fees must be calculated to effect a fair and reasonable contribution toward the costs of the system by all users.

It would simply not advance that legislative goal to permit a system that merely carries sewage through its sewer lines for a few hundred feet to impose a portion of the capital costs for its entire collection and treatment system on a direct connector while prohibiting the adjoining authority that actually treats the sewage at its treatment facility from recovering any part of its capital costs from that user. That, however, would be the ultimate result of interpreting the statutes so that it would grant permission to impose a connection fee only to the authority to which a user is directly connected.

Not only would such an interpretation of the statutes be inconsistent with the obvious legislative intent, it would also lead to an

unfair imposition of capital costs among users. The users that directly connect to a system that treats their sewage would effectively be subsidizing the users that benefit from the treatment facilities but that access them indirectly. At the same time, those users would be subsidizing the treatment facility developed and maintained by the system to which they directly connect but which they do not actually use. Neither result would comport with the legislative intent; neither would be in accord with the principles of fairness that we have previously held must be considered in construing these statutes. *See Airwick, supra,* 57 *N.J.* at 120–21, 270 *A*.2d 18.

The record before us presents circumstances unlike the ones that this Court was previously called upon to consider when addressing the subject of connection fees. As amicus Bergen County Utilities Authority points out, unlike the situation in which one entity operates a treatment facility and another merely operates a collection system that delivers waste to that treatment facility, in this matter both of the parties to this appeal operate treatment facilities. Moreover, as it explains, there are a number of regional authorities that operate treatment facilities, and that have borne the cost of developing those facilities, but that serve few, if any, properties through direct connections. Interpreting these statutes to permit a connection fee only when there is a direct connection would preclude those authorities from collecting any connection fees, a clear contradiction with the Legislature's intention that the capital costs of the treatment facilities be defrayed through the connection fees.

Our review and interpretation of these statutes leads us to conclude that each authority that serves a property, whether through a direct or an indirect connection, is permitted to charge a connection fee. Notwithstanding that interpretation, the imposition of any such fee must still be bound by the statutory command that the fee "represent a fair payment toward the cost of the system." *N.J.S.A.* 40:14A–8(b),:14B–22. In this regard, a fair

payment must be one that reflects the use of each system and is not duplicative.

■ In order to be faithful to these overarching principles, where a property is served by two authorities, fairness and equity demand that the capital costs be divided between costs of a collection system and costs of the treatment facility and its associated trunk lines in order that the connection fees rest on an appropriate basis. In this manner, although the governing statutes will permit each of the authorities to assess a connection fee, each must be a fee that is tied to the capital costs of the relevant portion of each authority's system.

That is, each connection fee must be tied to the cost of that part of the system that the particular connector uses, so that a property that merely has sewage transported for a distance through the piping system of one authority will be assessed based on the costs of that entity's collection system, but will not be charged for the costs of that entity's treatment system that it does not use. By the same token, the same property may be charged a connection fee by the authority that actually treats the sewage which reflects a portion of that entity's capital costs for its piping system and its treatment facility, consistent with the property's use. Finally, an authority that operates only a collection system and the authority that operates the treatment facility will each be permitted to assess their connection fee to defray capital costs as the statutes intended.

## IV.

■ With these conclusions as our guide, we turn to a consideration of their specific application to the appeal before us. This requires that we address three questions. First, we consider the challenge to North Bergen MUA to the timeliness of the appeal. Second, we address the conclusion of the Appellate Division that both authorities were entitled to a connection fee. Third, we consider the propriety of the allocation formula that the Law Division utilized to split the fee that plaintiff was permitted to pay

into escrow and that the Appellate Division found to comply with its directive on remand.

First, although North Bergen MUA did not file a cross-petition for certification, *see R.* 2:12–3(b), as part of its brief in opposition to the second petition for certification filed by North Hudson SA, it argued that the appeal was untimely. North Bergen MUA asserted that the petition sought to challenge the October 4, 2010, order of the Law Division apportioning the connection fee and that the apportionment could no longer be challenged because the time for that appeal expired forty-five days after that order. *See R.* 2:4–1(a). We need devote little attention to this assertion, because the focus of the North Hudson SA appeal was the entitlement of North Bergen MUA to any portion of the connection fee, however apportioned. Moreover, in light of the fact that the Appellate Division remanded to the Law Division to make findings of fact for its consideration in connection with the pending motion for reconsideration, the entirety of the order then on review became the subject of the second, timely petition for certification. We therefore perceive no impediment to our consideration of the trial court's allocation order.

Second, as we have explained, in order to effectuate the legislative intent evident in the statutory framework that authorizes the imposition of connection fees, it must be permissible for a property to be assessed such a fee based on both direct and indirect connections. However, in order to ensure that the fees assessed are fair and that they are not duplicative, each authority must tailor its fee to base it on the statutory criteria that govern the cost of the connection and the fair payment toward the costs of the system as we have described them.

Finally, the record now before us presents an unusual situation, because plaintiff was confronted with the connection fee calculated by North Hudson SA along with a threat of an additional fee that might be charged by North Bergen MUA. As part of its complaint and Order to Show Cause, plaintiff requested permission to pay the North Hudson SA fee into an escrow account, essentially

creating an interpleader action in which the two authorities could dispute which of them was entitled to the fee. By taking that approach, a connection fee that might or might not represent the full fee that our reading of the statutes would generate became the entire fee. That is, if the two authorities had independently calculated their connection fee, in compliance with the principles we have explained relating to the statutory command that it be a fair payment toward each system and that it be non-duplicative, the total connection fee might be different from the one that North Hudson SA calculated, which was based on its assumption that it was entitled to recover a portion of the capital costs and debt service for its entire system.

The nature of an interpleader action, however, is that it permitted plaintiff to pay the demanded fee and be relieved of any further obligation to the authorities, a result it needed to achieve in order to market the condominiums it had built. That entirely acceptable approach, therefore, required the Law Division to divide that sum, once the Appellate Division had determined that both of the authorities were entitled to a share of the connection fee. Our review of the manner in which the trial court complied with that directive leaves us confident that there has been no abuse of discretion in the apportionment judgment it reached. Because we do not perceive that there will be any future doubt as to the manner in which the statutory permission relating to connection fees will be applied, we need not engage in any more detailed analysis of the particular allocation formula that the trial court devised.

## V.

The judgment of the Appellate Division is affirmed as modified.

*For Affirmance as Modified*—Chief Justice RABNER and Justices LaVECCHIA, HOENS, PATTERSON and Judge RODRIGUEZ (temporarily assigned)—5.

*Not Participating*—Justice ALBIN and Judge CUFF (temporarily assigned).

*Opposed*—None.