NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS

-------------------------------------------------------x
HANSEN HOUSE, LLC,                          :
                                            :  TAX COURT OF NEW JERSEY
            Plaintiff,                       :  DOCKET NO: 012157-2017
                                            :              001445-2018
            v.                               :              013453-2018
                                            :
CITY OF VENTNOR,                            :
                                            :
            Defendant.                       :
                                            :
-------------------------------------------------------x

Decided:  September 9, 2022.

Raymond J. Went, Jr., for plaintiff (Nehmad Davis & Goldstein, PC, attorneys; Raymond J. Went, Jr. and Cheryl Lynn Walters, on the brief).

Edward O. Lind, for defendant (Hank N. Rovillard, Esquire, LLC, attorneys).

CIMINO, J.T.C.

Hansen House, LLC, seeks exemption from local property taxes for two properties in the City of Ventnor that it operates as Cooperative Sober Living Residences. The parties have cross-moved for summary judgment as to entitlement to an exemption to local property taxation. Based upon what has been presented to the court by Hansen House, there is insufficient evidence in the record to establish the exemption. However, there is also insufficient evidence in the record to grant Ventnor's motion foreclosing the exemption.

From the limited information provided by both sides, the following is what is known in this case. Ventnor is a resort community which borders the Atlantic Ocean and is immediately south of Atlantic City. The properties in question are adjacent to each other and have the street address of 103 South Austin Avenue and 105 South Austin Avenue and are Lots 4 and 5 of Block 4 of the tax map of Ventnor. The properties are located on the beach-block which is the block between the boardwalk which borders the beach and ocean, and the first street parallel to the ocean.

Hansen House purchased these properties and is currently using them for Cooperative Sober Living Residences (CSLRs) for individuals in recovery from drug and alcohol abuse. As described by Hansen House in its papers:

> Hansen House does not conduct any treatment of individuals in recovery from drugs and alcohol at the Properties. Instead, the disabled residents live together as a single housekeeping unit, functionally similar to a single-family residence. The residents must abide by strict rules, including requirements that they work or attend school, clean the home together, cook together, eat together, watch television together and attend off-site "12 step meetings." Unprepared food delivery is permitted, but the residents must cook and prepare the food together.

A certification from Jennifer Hansen, the president of the Hansen Foundation supports this assertion. Hansen House indicates that there has been no change in the

operations of the sober living houses and the exemption should apply to 2017 and subsequent years.[1]

The Hansen Foundation, Inc., a New Jersey not-for-profit corporation, controls Hansen House as its sole member. The foundation operates numerous sober living residences through Hansen House, two of which are the properties at issue in this case. In addition, the foundation also operates the Enlightened Café and Enlightened Farm, which provide employment and job training skills.

Treatment is provided by Enlightened Solutions, LLC, which is a for-profit entity whose sole member is Ole Hansen & Sons, Inc., also a for-profit entity. Hansen House asserts that residents of the properties in question are not required to attend Enlightened Solutions. During oral argument, counsel for Hansen House

---

[1] Hansen House was embroiled in litigation with the State as to licensing of a number of its CSLRs, including the two at issue. The State took the position that the residences needed to be licensed under the Rooming and Boarding House Act of 1979, N.J.S.A. 55:13B-1 to -16. "The [Act] was prompted by a number of boarding home fires which resulted in fatalities, and which attracted public attention to the conditions that existed in these facilities." Market St. Mission v. Bureau of Rooming & Boarding House Standards, Dep't of Cmty. Affairs, 110 N.J. 335, 341 (1988). Later, the State by regulation created Class F residences under the Act which specifically addressed Cooperative Sober Living Residences. 49 N.J.R. 1276 (June 5, 2017), 50 N.J.R. 310 (Jan. 16, 2018). In settling the litigation with the State, Hansen House agreed that no treatment would be provided on-site, which is a requirement to qualify for a Class F license. See N.J.A.C. 5:27-21 (definition of "cooperative sober living residences").

asserted that most if not all residents of the two houses are receiving treatment from Enlightened Solutions.

Ventnor has pointed to a financial confluence of the not-for-profit and the for-profit entities. Public filings with the Internal Revenue Service for 2018 reveal that Jennifer Hansen, as president of the Hansen Foundation, receives $129,866 annually in reportable compensation from Ole Hansen & Sons and Enlightened Solutions and $57,628 in other compensation as non-taxable benefits.[2] In addition, Roger Hansen serves as the Chairman and Secretary and receives $132,681 annually in reportable compensation from Ole Hansen & Sons and Enlightened Solutions and $57,200 in other compensation as non-taxable benefits. Michael Lentz is the Treasurer and he receives $180,501 annually in reportable compensation from Ole Hansen & Sons and Enlightened Solutions and $79,335 in other compensation as non-taxable benefits. Erika Hansen-Weich serves as a Trustee and receives $20,743 annually in reportable compensation from Ole Hansen & Sons and Enlightened Solutions. Roger and Edwina Hansen are married, and Jennifer Hansen and Erika Hansen are their daughters.

---

[2] Each year a qualified not-for-profit under I.R.C. § 501(c)(3) is required to file a Form 990 tax return which is available for public inspection through the Internal Revenue Service. I.R.C. § 6104(b) (public inspections); Treas. Reg. § 1.6033-2 (a)(2) (Form 990).

The public filings also reveal that of the $3,586,963 of lands, buildings, and equipment of the Hansen Foundation, $1,878,615 was loaned by Ole Hansen & Sons for purchases and $1,133,034 is encumbered by mortgages and notes with third parties. In addition, Ole Hansen & Sons received $301,832 from the foundation characterized as reimbursement of expenses, workers compensation, payroll processing fee, and other miscellaneous expenses. Ole Hansen & Sons also received $21,222 as rent on a building lease. Ole Hansen & Sons was a plaintiff along with Hansen House and the Hansen Foundation in a suit against the New Jersey Department of Community Affairs challenging whether the two properties, along with others, must be licensed as rooming and boarding houses.

The donors to the Hansen Foundation are unknown. However, as correctly stated in an attorney opinion letter from 2004, attached to the complaint to support the validity of non-profit status, contributions to the Hansen Foundation would be deductible for both income tax and federal gift and estate tax purposes.

This matter comes before the court on cross-motions for summary judgment. On summary judgment, the court must assess "whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). While not a per se rule, "[t]he filing of a cross-motion for

summary judgment generally limits the ability of the losing party to argue that an issue raises questions of fact, because the act of filing the cross-motion represents to the court the ripeness of the party's right to prevail as a matter of law." Spring Creek Holding Co. v. Shinnihon U.S.A. Co., 399 N.J. Super. 158, 177 (App. Div. 2008). However, it does not mean that summary judgment must be granted one way or another. Ibid.

The parties have focused their attention on the general question of whether CSLRs are eligible for the exemption. However, before deciding this question which may turn out to be one of broad general applicability, the unique facts of this case require examination of the nature and the extent of the joint effort between the for-profit treatment provider Enlightened Solutions and the not-for-profit housing provider Hansen House. The importance of this issue did not become fully apparent until after oral argument when documents requested by the court to confirm the status of Enlightened Solutions revealed it is a for-profit entity.[3] To that end, this court must examine whether there is excessive entanglement or whether the not-for-profit facilities are being used to benefit a for-profit endeavor.

As to excessive entanglement, this decision involves the intersection of two of the latest decisions of the New Jersey Supreme Court dealing with property tax exemptions. Namely, in Advance Housing, Inc. v. Township of Teaneck, 215 N.J.

---

[3] At oral argument it was thought that Enlightened Solutions is a not-for-profit.

549 (2013) the Supreme Court was satisfied that the "housing and supportive services are fully integrated - - one dependent on the other for success - - so that its charitable purpose . . . is a practical goal." Id. at 576. As applied to this case, the issue is whether the housing services provided by the not-for-profit Hansen House, which is wholly owned by the Hansen Foundation, are fully integrated with the treatment services provided by the for-profit Enlightened Solutions, a wholly owned entity of Ole Hansen & Sons.

The other New Jersey Supreme Court decision is International Schools Services, Inc. v. Township of West Windsor, 207 N.J. 3 (2011) which "doubt[ed] that the Legislature ever envisioned [a] result" that "would allow a nonprofit entity to conduct for-profit activities in a comingled fashion on its owned and occupied property, and not just to support for-profit activities of the entity but also to support the for-profit activities of others." Id. at 23. The conundrum faced by the taxpayer in this case is that while the comingling of the housing and treatment supports the establishment of the exemption in the first instance, the same comingling may be fatal to an exemption claim when it involves excessive entanglement with a profit-making endeavor.[4] Id. at 24.

---

[4] To be clear, this case does not address the scenario in which CSLRs such as those operated by Hansen House operate in conjunction with a not-for-profit treatment provider.

As to benefitting a for-profit endeavor, another decision of the New Jersey Supreme Court, New Jersey Carpenters Apprentice Training & Educational Fund v. Borough of Kenilworth, 147 N.J. 171 (1996), precludes an exemption of a property utilized for a seemingly not-for-profit activity that benefits a for-profit enterprise. While this decision is similar to International Schools Services in that it expresses the Supreme Court's concern of overly close relationships between for-profits and not-for-profits, it does not focus upon the comingling on the property itself, but rather whether the activities on the property benefit a specific for-profit sector of the economy. N.J. Carpenters, 147 N.J. at 189. In other words, even if the CSLRs meet the standard for exemption without the services provided by Enlightened Solutions, the inquiry is not complete. It still has to be determined if the Hansen House CSLRs exist for the benefit of Enlightened Solutions. To summarize, the three aforementioned decisions of the Supreme Court require the court to examine two issues, first, whether there is excessive entanglement with a for-profit entity, and second, whether the property is utilized to benefit a for-profit entity.

For most non-governmental properties, the starting point of the exemption analysis is N.J.S.A. 54:4-3.6.[5] The statute provides in pertinent part:

> The following property shall be exempt from taxation under this chapter: . . . all buildings actually used in the work of associations and corporations organized

---

[5] There are other statutory provisions dealing with non-governmental entities. See, e.g., N.J.S.A. 54:4-3.7 to 3.27

exclusively for the moral and mental improvement of men, women and children . . . [and] all buildings actually used in the work of associations and corporations organized exclusively for . . . charitable purposes . . .

[N.J.S.A. 54:4-3.6.]

It is a fundamental principle that statutory exemptions from taxation are to be strictly construed against those invoking the exemption. Advance Hous., 215 N.J. at 566; Int'l Schs. Servs., 207 N.J. at 15; N.J. Carpenters, 147 N.J. at 177. The party seeking the exemption bears the burden of proving that the basis has been established. Int'l Schs. Servs., 207 N.J. at 15; Advance Hous., 215 N.J. at 566; N.J. Carpenters, 147 N.J. at 178. These principles foster the "well-established policy that the public tax burden is to be borne fairly and equitably." Advance Hous., 215 N.J. at 566. See Int'l Schs. Servs., 207 N.J. at 15.

The seminal three-part test for establishing an exemption requires that the (1) organization must be organized exclusively for the charitable purpose; (2) its property is actually used for a charitable purpose; and (3) its use and operation of the property is not for profit. Int'l Schs. Servs., 207 N.J. at 16 (citing Paper Mill Playhouse v. Township of Millburn, 95 N.J. 503, 506 (1984)); Advance Hous., 215 N.J. at 567-68 (citing Paper Mill Playhouse, 95 N.J. at 506). The three prongs of the test are commonly referred to as the "organization," "use," and "profit" prongs. Borough of Hamburg v. Trs. of Presbytery of Newton, 28 N.J. Tax 311, 318 (Tax 2015).

As to the organization prong, whether an entity is exclusively organized for an exempt purpose or has been conferred tax-exempt status does not automatically confer an exemption from property tax. Decisions span back over 100 years in which the subterfuge of a "corporate dress" was found insufficient to confer non-profit status. See also Town of Montclair v. State Bd. of Equalization of Taxes, 86 N.J.L. 497, 497-98 (Sup. Ct. 1914), aff'd., 88 N.J.L. 374 (E.&A. 1915). Back in the 1910s, our courts determined that merely reorganizing a school from a for-profit corporation to a not-for-profit corporation is insufficient to confer an exemption from property tax. Town of Montclair, 86 N.J.L. at 497-98. See also Carteret Acad., 102 N.J.L. at 529 (similar facts from the 1920s). In the 1980s, this court held that simply reorganizing a family medical practice from a for-profit partnership to a not-for-profit corporation cannot result in a property tax exemption. Township of Weymouth v. Mem'l Park Fam. Prac. Ctr., Inc., 7 N.J. Tax 589, 595-96, 605 (Tax 1985). While Hansen House is indeed organized as a non-profit and has been conferred tax exempt status by the Internal Revenue Service, satisfaction of the use and profit prongs is still necessary to grant exemption from local property taxation. Black United Fund of N.J., Inc. v. City of East Orange, 339 N.J. Super. 462, 466 (App. Div. 2001) (Section 501(c)(3) status has no relation to state law governing exemption).

Since the use and profit prongs consist of "interwoven parts", it is best to review them "in tandem." Int'l Schs. Servs., 207 N.J. at 17. As pointed out by the Supreme Court in both Advance Housing and International Schools Services, it is a "fact specific analysis" that "depends on the facts of each case." Advance Hous., 215 N.J. at 568; Int'l Schs. Servs., 207 N.J. at 22. Coupled with this requirement of a fact specific analysis is the application of common sense. Int'l Schs. Servs., 207 N.J. at 20; Paper Mill Playhouse, 95 N.J. at 521. The requisite common-sense fact-based approach requires more than merely looking at the books of the organization and tallying up its profit and loss. Int'l Schs. Servs., 207 N.J. at 20; Paper Mill Playhouse, 95 N.J. at 521.

As discussed above, the first issue is whether there is excessive entanglement between Hansen House and Enlightened Solutions. On the one hand, the entanglement supports the "use" prong in that the activities of Hansen House and Enlightened Solutions are fully-integrated – one dependent on the other for success. However, the Supreme Court has cautioned that excessive entanglement between a for-profit and not-for-profit entity is problematic to an organization seeking to satisfy the profit prong. Int'l Schs. Servs., 207 N.J. at 24. The Court is concerned that "[i]nseparabl[e] entangle[ment] with for-profit entities [allows] indirect taxpayer subsidization of those entities. In other words, a competitive advantage

-11-

would be conferred on those for-profit entities at the expense of the taxpaying public." Int'l Schs. Servs., 207 N.J. at 23.

From the prior decisions of the Court, a number of factors can be distilled that provide a practical fact-based approach. For example, there has to be examination of who benefits from the endeavor. The court should examine the facts to determine whether "profit can be traced into someone's personal pocket." Int'l Schs. Servs., 207 N.J. at 24 (citing Paper Mill Playhouse, 95 N.J. at 522).

A related inquiry is whether the use is actually an exempt activity or merely constitutes a contractual "quid pro quo [which] permeates the entire operation." Presbyterian Homes of Synod of N.J. v. Div. of Tax App., 55 N.J. 275, 287 (1970). For example, a luxurious apartment complex operated by a religious group, a non-profit, catering to retirees with an ability to pay, does not constitute a tax-exempt charitable endeavor. See Id. at 289-290.

While the Supreme Court has dictated caution in approving exemptions when for-profit and not-for-profit activities occur on the same property, the Legislature has allowed for-profit activities on not-for-profit property in certain instances, so long as the profit-making portion is subject to taxation. See, e.g., L. 1983, c. 224 (leasing of hospital space to for-profit); L. 1977, c. 370 (leasing of school space to for-profit). In applying the Legislative allowances of for-profit activity, the Supreme Court has required that the distinction between the for-profit and not-for-profit

activity must be "evident, readily ascertainable, and separately accountable for taxing purposes" and "presumes an ability to identify it, segregate it, and measure it for local taxing purposes." Int'l Schs. Servs., 207 N.J. at 23. See also A.H.S. Hosp. Corp. v. Town of Morristown, 28 N.J. Tax 456, 500-501 (Tax 2015).

An applicant for an exemption has a "duty to conduct its affairs in such a fashion as to allow local taxing authorities to readily determine its eligibility for exemption." Int'l. Schs. Servs., 207 N.J. at 24. A failure of this duty necessitates denial of the exemption. Id. at 24-25. The taxpayer selects the form of business operation, and the taxpayer has to deal with the consequences of its selection. General Trading Co. v. Dir., Div. of Tax'n., 83 N.J. 122, 136-37 (1980). In International Schools Services, there were related for-profit and not-for-profit entities using the same property. Id. at 207 N.J. at 24. The Court determined that the "quagmire of entitlement" precluded the exemption. Ibid.

As set forth during oral argument colloquy, there are a plethora of unanswered questions. However, the limited information provided thus far is as follows. The Hansen Foundation is indebted to Ole Hansen & Sons for about half of its assets. It is not clear how the Hansen Foundation is indebted to Ole Hansen & Sons and how the debts are secured. In addition, the Hansen Foundation paid over $300,000 in one year to Ole Hansen & Sons for certain services, and has rented a facility for over $20,000 per year from Ole Hansen. The particulars of these types of transfers may

also shed some light on the relationship between the parties. The salaries of the officers of the Hansen Foundation, mostly Hansen family members, are paid by Ole Hansen & Sons and Enlightened Solutions. Who exactly are the officers and shareholders of Ole Hansen & Sons and what are the other business interests of Ole Hansen & Sons may be relevant. Moreover, when suit was brought against the State challenging the requirement of rooming and boarding house licensure, the named plaintiffs were Hansen House, the Hansen Foundation and Ole Hansen & Sons. There is the open question of the extent of the relationship between the for-profit and not-for-profit entities that necessitated Ole Hansen & Sons as a plaintiff in the suit against the State.

Per counsel, most if not all residents of both Hansen House properties attend treatment provided by Enlightened Solutions. It is unclear whether this is currently the case or has existed at all times. It is unknown how much is being paid for each resident and who is paying (i.e., insurance, self-pay, government, treatment provider). It is also unknown if there is an agreement (i.e. lease) between the residents and Hansen House and the terms of any such agreement. It is further unclear, how the funds raised by the not-for-profit subsidize or lower the housing costs.

Counsel also indicated that the for-profit and not-for-profit have joint administration of a web site for resident/patient registration. Advertising and

promotional materials, both broadcast or narrowcast electronically through websites and social media platforms, as well as traditional materials, such as brochures, billboards, radio and television advertisements and slide deck presentations, from both Hansen House and Enlightened Solutions could be helpful in explaining the relationship of the parties. Also, there is the question of whether employees are working or paid for by both entities and the significance. In addition, the contributors to the Hansen Foundation and the Hansen House are unknown. Moreover, if the contributors are members of the Hansen family or the for-profit entities, it may be relevant whether the family is obtaining any estate and gift tax or income tax advantage from the contributions. Overall, without this information, it is impossible for the court to discern where the for-profit stops and the not-for-profit begins. See A.H.S. Hosp., 28 N.J. Tax at 500.

Even if the physical operation of the properties is either entirely not-for-profit or the not-for-profit and for-profit entities are not excessively entangled, the inquiry does not end. The court must still examine whether the operation benefits a profit-making entity. The Supreme Court dealt with this scenario in New Jersey Carpenters in which a not-for-profit job training facility was established by contractors and a union to train apprentice carpenters. Id., 147 N.J. at 173. While the training facility itself was not established to generate a profit, it was created primarily to benefit a specific for-profit sector of the economy. Id. at 184, 185. The Court denied the

exemption. Id. at 189. Likewise, in Textile Research Institute v. Township of Princeton, 35 N.J. 218 (1961), an exemption was denied by the Supreme Court to a not-for-profit institute conducting research on textiles with the objective of benefitting the textile industry, a profit-making segment of society. Id. at 223. Our exemption law generally seeks to avoid conferring a competitive advantage to a for-profit entity at the expense of the taxpaying public. See Int'l Schs. Servs., 207 N.J. at 23.

While Hansen House asserts that residents are not required to receive services from Enlightened Solutions and can go to any service provider, as asserted by counsel at oral argument, most if not all of the residents are being provided services by Enlightened Solutions. Further, as Jennifer Hansen testified before the Atlantic City Planning Board as to a nearby property, there is a dearth of housing available for those requiring recovery services. The parties need to address whether having Hansen House as a placement source confers a competitive advantage to Enlightened Solutions in obtaining and retaining clients. This includes the specific question of whether having properties available which are subsidized by donations and tax exemptions provides further competitive advantage.

As already stated, there is the issue of how the parties work together such as through the joint administration of a website. In other words the question is whether this joint effort is considered a competitive advantage that would inure to

Enlightened Solutions. The standard is not merely whether money can be traced into someone's pocket, but also whether a competitive advantage is conferred. It is not so much whether Enlightened Solutions directly profits from the reduced housing costs, but rather whether its competitive position in the marketplace would be enhanced by having housing readily available with an effective lower cost due to the property tax exemption. In addition, answers to the questions pertaining to entanglement may be helpful in resolving the issue of whether the Hansen House properties benefit for-profit endeavors.

While argument can be made that the situation here is not analogous to New Jersey Carpenters or Textile Research Institute since the properties here benefit the residents thereof, the same was said for the students which attended the New Jersey Carpenter's school. This argument was accepted by the Appellate Division only to be reversed by the Supreme Court on this particular point. N.J. Carpenters Apprentice Training & Educ. Fund v. Borough of Kenilworth, 284 N.J. Super. 521, 526, 528 (App. Div. 1995), rev'd, 147 N.J. 171, 184 (1996). Here, the non-profit Hansen Foundation is controlled by the same individuals that are affiliated with the for-profit treatment provider Enlightened Solutions which provides services to residents of the properties. Whether the treatment provider provides residents for the property, or whether the properties provide patients for the treatment provider, the issue is the same – whether a not-for-profit housing provider is providing a

-17-

substantial benefit to a for-profit treatment provider. Just as there are questions to be answered as to entanglement, the record needs to be fleshed out as to whether the properties benefit a for-profit entity.

The twin mandates that there can be neither entanglement with, nor benefit to, a for-profit entity serves the singular purpose of ensuring that the exemption is reserved for truly not-for-profit endeavors. Hansen House and Enlightened Solutions work in tandem to provide drug and alcohol recovery. While a seemingly commendable activity, it is not the exclusive province of not-for-profit or charitable providers. One of the overarching questions is whether allowing an exemption in this case would convey a competitive advantage to Enlightened Solutions which its for-profit competitors do not enjoy.

Just saying that Hansen House and Enlightened Solutions does good work and deserves the exemption is not enough. Providing an exemption in a competitive marketplace has the potential to cause unintentional consequences such as the elimination of competition and the resulting availability of services.

Moreover, local property taxes fund schools, counties and municipalities. In our modern society these local entities do more than teach the three Rs[6], pave the roads and police the streets. These governmental entities provide vital social

---

[6] Three Rs – reading, [w]riting and [a]rithmetic. See Fishers Adolescent Catholic Enrichment Soc'y, Inc. v. Bridgewater, 23 N.E.3d 1, 7 (Ind. 2015) (Rucker, J., dissenting).

-18-

services as well. The elected branches have the responsibility of setting the policy of which programs are funded and for how much. While mandated by the Legislature, exemptions have to be approached cautiously since they undercut the amount of funds available for other governmental endeavors and the authority of local officials to make programmatic spending decisions. With a healthy dose of caution, this court is denying the cross-motions so that a complete record can be made.

There is one final issue which is of a procedural nature concerning the filing of the complaints in this matter. Ventnor asserts that certain complaints in this matter are barred. If Ventnor is correct, the practical outcome would be that while a claim of exemption as to 105 South Austin could go forward, the claim as to 103 South Austin would be barred.

As to 103 South Austin, Ventnor argues the complaint should have first been filed with the Atlantic County Tax Board. Hansen House asserts that prior to 2021, the appeal statute dealing with county tax boards only mandated "assessment" appeals, not "assessment and exemption" appeals. N.J.S.A. 54:3-21 (amended L. 2021, c. 17, § 6). Without deciding this precise issue, the court notes that the court rules provide for the transfer of a matter to the tax board. R. 1:13-4. Brookview Gardens, Inc. v. Borough of Bergenfield, 4 N.J. Tax 625, 629-30 (Tax 1982), aff'd, 6 N.J. Tax 253 (App. Div. 1983). However, while courts generally have flexibility

with regards to the timing of court matters, county boards must complete their business within a statutorily defined time period each year. N.J.S.A. 54:3-26. City of Atlantic City v. Greate Bay Hotel and Casino, 16 N.J. Tax 486, 495-96 (Tax 1997), aff'd o.b., 304 N.J. Super. 457, 17 N.J. Tax 101 (App. Div. 1997). The time period is jurisdictional. Ibid.; Danis v. Middlesex Cty. Bd. of Tax'n, 113 N.J. Super. 6, 9 (App. Div. 1971); Vicari v. Township of Bethlehem, 8 N.J. Tax 513, 517 (Tax 1986). See also Union City Assoc. v. City of Union, 115 N.J. 17, 27 n. 5 (1989). A judgment rendered after the deadline is void. Brookview Gardens, 4 N.J. Tax at 626. County boards must entirely dispose of their cases either by June 30th of a given year or by a later date as provided by the Director. Needless to say, the deadline has long expired in this matter. Even if this court remanded the matter back to the tax board, any judgment, whether for or against, would be void and without effect and the matter would return to this court. Centorino v. Township of Tewksbury, 18 N.J. Tax 303, 316 (Tax 1999).

In addition, the 103 South Austin complaint alleges the parties agreed this matter would be consolidated with the 105 South Austin complaints. The court wants to avoid having both counsel testify as to contours of this issue.

The court denies dismissal of the 103 South Austin complaint without prejudice and will decide the issue after dealing with the exemption issue which is substantially identical for both properties.[7]

For the foregoing reasons, the plaintiff's motion for summary judgment is DENIED and defendant's cross-motion for summary judgment is DENIED.

---

[7] Ventnor also challenges the second of the two complaints filed for the 105 South Austin property. The evidential record for both 105 South Austin complaints will be substantially identical. The court denies dismissal of the second complaint without prejudice and will decide the issue after dealing with the exemption issue which is substantially identical for both 105 South Austin complaints.