## IN RE APPLICATION OF MANUEL A. DE VENGOECHEA FOR A MANDAMUS.

### Argued June 6, 1914—Decided July 15, 1914.

1. The power to order an inspection of the books of a corporation is so great, and may have such ruinous results, that it will be ordered only when the court is satisfied that it will result in benefit to the stockholders.
2. The inspection will not be granted when the court is satisfied that the application is not made in good faith, or with ulterior motives on the part of the applicant.

On application for writ of *mandamus*.

Before Justice SWAYZE.

For the application, *Franklin W. Fort* (*Fort & Fort* on the brief).

Opposed, *Robert H. McCarter, Louis Marshal* (*Frederick R. Swift* on the brief).

The opinion of the court was delivered by

SWAYZE, J.   I do not find it necessary to consider the very interesting and important legal question that was argued as to the limitation of the common law right of a stockholder to examine the books of a corporation, by provisions inserted in the articles of association.   I have reached the conclusion that the application is not made in good faith for the purpose of ascertaining the true *status* of the company or of taking measures to protect the interests of the applicant as·a stockholder, but rather for the purpose of annoying the company and perhaps assisting the applicant in his pending litigation against it, which is aside from his interest as a stockholder.

The list of questions submitted to the company as to which he desired information is long, and not only covers a large part of the company's operations in Costa Rica and Colombia, but seeks for information as to the actual value of properties already owned by the company which cannot be ascertained from the books, and in the case of many properties was moreover well known to the applicant.   The attempt to have the examination conducted by counsel who were employed by the applicant in litigation adverse to the company is an indication of hostility, and leads me to believe that threats were in fact made by the applicant against the company as testified to in the counter affidavits.   The threat to use against the company letters which seem to have been stolen from its files instead of calling the attention of the company to the theft and revealing the source from which he obtained the copies, lead me to believe that he is inimical to the company.   His relations with the Atlantic Fruit and Steamship Company

evince a willingness to help a competitor, not consistent with the interests of the United Fruit Company.

The fact that his holdings of stock are small compared with the whole amount outstanding is of course of no importance. It is the duty of the courts in a proper case to protect minority stockholders, but the power to order an inspection of books is so great, its exercise may affect unfavorably so many innocent stockholders, and may cause such inconvenience or perhaps such ruinous results to a corporation whose operations are so extensive in two continents that the court ought to exercise the power with the greatest care and only when a case is presented which indicates not only a *bona fide* desire to safeguard the interests of all stockholders but a probability that the interests of all will be served by the proposed investigation. It is a striking fact that although this effort of the applicant to secure an inspection of the books has been pending several months, and although he had the opportunity at the annual meeting in 1913, at which the stockholders were largely represented by more than seventy per cent. of the total stock outstanding, and although the applicant then raised questions as to the conduct of the directors and officers, he stood alone in his disapproval of their acts, and the intervening time has brought no other stockholder to his aid. In such a case the court ought to consider with even greater care than usual the grounds alleged for an inspection. The charge that banana plantations were bought at an excessive price, that the Lindo Fruit Company which owned them was controlled by officers and directors of the United Fruit Company; that the Lindo company sold to an English corporation, also controlled by officers and directors of the United Fruit Company, from which the latter acquired the properties, is a charge that would require investigation and justify action by the court if it were properly sustained by the proofs. It is, however, made solely upon information and belief, the source of which is not disclosed, and the date of the transaction is left uncertain. So far as appears, the United Fruit Company acquired these properties within a few months after "the early part of the

year 1912,"—that is, probably before the applicant became a stockholder, which was not until August, 1912. Whether he bought his stock with knowledge of this transaction is an important circumstance in determining whether the discretion of the court to award a *mandamus* shall be exercised in his favor. The knowledge of the fact rests in his breast alone and he has not chosen to make it known. Serious as the charge is, I am not willing in the state of the proofs to throw open to the applicant the books of the company, certainly without the approval and apparently against the wishes of his fellow-stockholders who have, by formal resolution from which the applicant alone dissented, approved the acts of the officers of the company.

The charge that the company has acquired various other banana plantations at excessive prices imputes at most only bad judgment to the responsible officers, and not necessarily even that. The depreciation is said to be due to the fact, as the applicant says, that the plantations are affected with the banana disease or with a saline impregnation known as salitre. Whether the condition existed at the time of the purchase or arose afterward, whether it was known or ought to have been known to the officers of the company, does not appear. No doubt, in transactions as numerous and as large as those of the United Fruit Company, mistakes are made, and the company's agents are sometimes deceived. That fact would not necessarily show mismanagement, and the long continued success of the company indicates good management. The drop in the stock exchange value of its stock is no more than happens in the case of stock of the best managed corporations due to fluctuations in general market conditions entirely outside the control of the company.

In one case it is conceded that the company paid more for a plantation than it was worth, but it is shown that other considerations valuable to the company were involved. The effort of the applicant to make a case by the use of a portion only of Mr. Schermerhorn's entirely frank letter, and by concealing an essential portion, does not commend him to favorable consideration.

The applicant himself avers that he had personal knowledge of these transactions or had seen copies of the deeds recorded in Colombia; whether any of this knowledge antedated his purchase of stock does not appear.

Other charges that are made on information and belief, I disregard, in the absence of proof of the source of the information and the responsibility and knowledge of the informants.

The charge that there are discrepancies between the reports for 1912 and 1913 is, I think, sufficiently met by the explanation of the company, which the applicant does not controvert.

The applicant fails to make out a case which would justify me in allowing the writ. The application is therefore denied, with costs.