R. MILTON FULLE, RELATOR, v. WHITE METAL MANU-FACTURING COMPANY ET AL., RESPONDENTS.

Submitted January 25, 1935—Decided July 31, 1935.

Before Justices LLOYD, CASE and DONGES.

For the relator, *Lum, Tamblyn & Fairlee* and *William A. Wachenfeld.*

For the respondents, *Pitney, Hardin & Skinner.*

PER CURIAM.

This is an application by a stockholder for an alternative or peremptory writ of *mandamus* to compel the respondent corporation White Metal Manufacturing Company, and its treasurer, Hubert Richter, to permit an examination of the books of the corporation by relator and his accountant. The relator is the owner of one hundred and thirty-nine shares of the capital stock of the respondent corporation, which he acquired from his father, who was president of the corporation from 1919 to May, 1932. At that time, the father retired and relator was elected a director and secretary of the cor-

poration. He was also given a contract for a two-year period, at a salary of $18,000 per year, as he testified: "to devote the major portion of my time to the promotion of sales." He was paid the salary for the two years, during which time, he testified: "Q. Now, let me ask you again, as a result of your devoting some sixty per cent. of your time, as you say, to the promotion of sales for a period of two years, what was the amount of gross business that you brought to the company as a result of your efforts? A. Very small amount. I should not say in the aggregate more than a thousand dollars gross." His explanation of his failure to make more sales was that the prices given him were too high. The gross sales of the company for the period of relator's contract were $1,349,000.

In May, 1934, relator's contract of employment was not renewed, and, thereupon, it is apparent serious differences arose between relator and the other two directors, who were Colonel Rumbough, who succeeded relator's father as president, and Mr. Richter, the treasurer. These were the active persons in the management of the company. These differences led to offers by relator to sell his stock to the other directors, but no agreement as to price was ever arrived at.

It appears beyond question that the business is profitable and the only real criticism of the management by relator is that the respondent corporation sold to one of its customers at less than cost. This is denied by the officers of the corporation and there appears in the record nothing to support such statement. One purpose of relator's demand for inspection of the books is probably disclosed by his answer to the following question on his direct examination: "Q. Have you any other purpose in mind in making or asking for an inspection and examination of the books, other than what you have told us? A. Well, in all frankness, I might add that it would lead—such an examination would lead to a more equitable determination of what our family's stock interest is worth."

A careful reading of the record leads to the conclusion that the dissatisfaction of relator arose when his contract was not renewed, and that from that date, he entered upon a course of objection designed to bring about his re-employment or the purchase of his family's stock at a high price.

It appears that there have been annual audits of the books made by a reputable firm of accountants and annual reports based thereon, all of which have been available to the relator.

We think that the showing by relator is not such as to entitle him to the extraordinary aid of this court. The motive behind this action appears to be animus engendered by separation from a large salary. The probable benefit to the corporation from such an examination does not appear. The embarrassment to the conduct of the corporation business will not be offset by any substantial benefit. In this situation, the relator should not have his application granted.

It is the settled law of this state that the power to order an inspection of the books of a corporation is so great, and its exercise may have such ruinous consequences, that it will be ordered only when "a case is presented which indicates not only a *bona fide* desire to safeguard the interests of all stockholders but a probability that the interests of all will be served by the proposed investigation." *In re De Vengoechea,* 86 *N. J. L.* 35; 91 *Atl. Rep.* 314; *Vernam* v. *Scott,* 12 *N. J. Mis. R.* 177; 171 *Atl. Rep.* 171.

The rule is discharged, and the application for a writ of *mandamus* is denied, with costs.