11 N.J. Super. 507 (1951)
78 A.2d 610
MICHAEL SIENA, PLAINTIFF-RESPONDENT,
v.
GRAND LODGE OF THE STATE OF NEW JERSEY, ORDER SONS OF ITALY IN AMERICA, A CORPORATION, AND JOSEPH GIZZI, LOUIS J. LIGUORI AND GERARDO E. IERVOLINO, DEFENDANTS, GRAND LODGE OF THE STATE OF NEW JERSEY, ORDER SONS OF ITALY IN AMERICA, A CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 22, 1951.
Decided February 6, 1951.
*508 Before Judges McGEEHAN, JAYNE and WM. J. BRENNAN, JR.
*509 Mr. Merritt Lane, Jr., argued the cause for the appellant (Messrs. McCarter, English & Studer, attorneys; Mr. Augustus C. Studer, Jr., of counsel).
Mr. Joseph H. Lerner argued the cause for the respondent.
The opinion of the court was delivered by JAYNE, J.A.D.
The plaintiff instituted this action by filing a complaint in lieu of mandamus demanding a judgment directing the defendant to permit the plaintiff to examine and cause the audit of the financial records and books of account of the defendant embracing a period of years in the past, including those accounts pertaining to the administration of the Mortuary Benefit Fund and to the conduct and operation of the Orphans' Home.
The Supreme Lodge, Order Sons of Italy in America, is the national organization, which may be said to have predominant supervision over all subordinate associations such as the defendant Grand Lodge of the State of New Jersey, Order Sons of Italy in America, a corporation instituted primarily for objects of fraternity and not for the acquisition of pecuniary profit. Beneath the Grand Lodge of each state are the district lodges, which are the community units in which the individual obtains membership. The governmental structure of the confederacy, although representative in character, rests fundamentally upon the will of the members of the local and district lodges. For example, the Grand Lodge of the state is composed of officers and delegates chosen by the members of the local lodges.
The Grand Lodge of New Jersey, pursuant to the authority of its certificate of incorporation, established a Mortuary Benefit Fund for the benefit of the members of the affiliated lodges, and also maintains an Orphans' Home. Both of those enterprises are functions of the Grand Lodge. The Mortuary Benefit Fund consists of the premiums currently received from members of the order who join the fund, and is administered in accordance with a collection of pertinent by-laws which, inter alia, state: "It is a trust fund and governed *510 by the laws and rules of the Grand Lodge of the State of New Jersey."
The maintenance of the Orphans' Home derives its financial support by means of a per capita assessment levied upon the membership of the local and district lodges.
The plaintiff is a member of a local lodge and an eligible beneficiary of the Mortuary Benefit Fund. He has been a delegate to the Grand Lodge, a Grand Trustee, and Grand Recording Secretary.
The plaintiff asserts that the information he obtained of the administration of the financial affairs of the Grand Lodge while serving in some or all of those capacities inspired him to address a communication to the members of the Arbitration Committee of the Grand Lodge on September 24, 1948, requesting the opportunity to inspect and audit the specified records and books of account. The request was not immediately granted and on October 28, 1948, he dispatched a similar overture to the Supreme Lodge.
In those communications he set forth the following reasons for his application:
"1. There has been no periodic accounting of the affairs of the Grand Lodge made available to me and other individual members.
"2. Funds have been disbursed by officers of the Grand Lodge without authority.
"3. Illegal death benefits have been paid.
"4. An illegal mortgage investment of funds of the Lodge was made.
"5. Monies of the Lodge Mortuary Fund were illegally diverted from the same.
"6. No itemized accounting has been made of receipts of monies for the maintenance of persons who were not orphans in the Orphans Home maintained by the Lodge.
"7. Illegal personal loans were made to employees of the Lodge.
"8. Printing bills for bulletins were illegally incurred and paid."
The trial resulted in a judgment directing the defendant, Grand Lodge, to produce the stated records, reports, books of account, bank statements, and checks "having to do with the accounts of the Grand Council, Order Sons of Italy in America, and having to do with the Mortuary Benefit Fund and the Orphans Home * * * during the period from *511 July 1, 1944, through June 30, 1949," for examination and audit by Harry Kalb & Company, certified public accountants, with the plaintiff (at his expense) and, if desired, in the presence of the defendant's accountants. 8 N.J. Super. 579 (Law Div. 1950).
The judgment constitutes the subject matter of the present appeal.
Initially, the appellant calls in question the status of the plaintiff lawfully to prosecute this action. In Emma v. Loggia Fasci Italici No. 16, Sons of Italy, 7 N.J. Misc. 387 (Sup. Ct. 1929), it was determined: "In the present case, participation in a mortuary fund is involved, and that is a property right." See, Id., 5 N.J. Misc. 1073 (Sup. Ct. 1927); Freda v. Societa Di Mutero, &c., Jersey City, 106 N.J.L. 17 (Sup. Ct. 1930). Vide, 1 Bacon, Life and Accident Insurance (4th ed.), § 49 et seq.
Where the right to examine the books and records of the corporation exists, an action in lieu of mandamus is appropriately maintainable. Stettauer v. N.Y. & Scranton Const. Co., 42 N.J. Eq. 46 (Ch. 1886); Trimble v. American Sugar Refining Co., 61 N.J. Eq. 340 (Ch. 1901); Fuller v. Alexander Hollander & Co., 61 N.J. Eq. 648 (Ch. 1900); Bruning v. Hoboken Printing & Pub. Co., 67 N.J.L. 119 (Sup. Ct. 1902); Feick v. Hill Bread Co., 91 N.J.L. 486 (Sup. Ct. 1918); affirmed, 92 N.J.L. 513 (E. & A. 1918); Wyckoff v. Hardware Supply Co., 134 N.J.L. 172 (Sup. Ct. 1946).
The right of the member or stockholder possessing a proprietary interest in the corporation to inspect the books and records, unlike that of a director of the corporation, is a qualified rather than an absolute right in that it is only judicially accorded where the application is made in good faith and is for a purpose germane to the applicant's status or proprietary interest as a member or stockholder. Bruning v. Hoboken Printing & Pub. Co., supra; Feick v. Hill Bread Co., supra; McMahon v. Dispatch Printing Co., 101 N.J.L. 470 (Sup. Ct. 1925); Schroeck v. J.M. Quinby & Co., 102 N.J.L. 564 (Sup. Ct. 1926); Drake v. Newton Amusement Corp., 123 N.J.L. 560 (Sup. Ct. 1939); Kemp v. Sloss-Sheffield *512 Steel & Iron Co., 128 N.J.L. 322 (Sup. Ct. 1942); Morris v. United Piece Dye Works, 137 N.J.L. 262 (Sup. Ct. 1948).
In our review of the present case there are two features of it that particularly engage our attention. The first relates to the incentive of the plaintiff in the prosecution of the action, and the other concerns his contractual obligation, if any, first to exhaust his available relief within the remedial privileges of the society before resorting to the courts for redress.
We shall briefly discuss the evidence pertaining to those subjects.
The plaintiff was admitted to membership in the district lodge in 1913. He asserts that he was "persecuted" in 1919 by "all the grand officers and Supreme officers." The "Orator," the officer who prosecuted the charge against him, testified that the plaintiff's membership was at the conclusion of the proceedings suspended for a term of six months. The plaintiff, however, was subsequently elected by the membership of his lodge to serve as a delegate to the Grand Lodge conventions from 1923 to 1946. He attended the conventions in his capacity as a delegate and upon his return each year he reported at a session of his lodge that "everything was 100%" with respect to the affairs of the Grand Lodge.
The plaintiff occupied the position of Recording Secretary of the Grand Lodge from September, 1936, until September, 1946, during which period he currently received with knowledge of its source a portion of his salary from the Mortuary Benefit Fund, and upon request was granted a personal loan from the funds of the association.
Prior to the convention of 1946 the plaintiff requested the Grand Venerable of the Order to recommend an increase in the salary of the Recording Secretary, which he refused to do, whereupon the plaintiff declined the nomination to continue in that position. A member of the clergy who attended that convention testified that on that occasion the plaintiff in a conversation with him complained that "he was not treated well by the Council of the Grand Lodge." He thereafter *513 characterized the annual sessions as "one man conventions" and no longer attended them as a delegate. The plaintiff denies that the failure to increase his salary inspired any antagonistic sentiment against the officers of the Grand Lodge or motivated the cessation of his active participation in its administrative affairs. Thoreau once said, "What is called resignation is confirmed desperation."
Time elapsed, during a portion of which intervening period the plaintiff was ill, until the plaintiff dispatched his demands in September and October, 1948. The Supreme Financial Secretary testified that in discussing the demand with the plaintiff, the latter remarked, "Well, you know, I want revenge," and "If they give me some satisfaction I will drop the report." At a subsequent interview the plaintiff expostulated "I don't give a damn for the organization. I want to take my revenge against the people (Grand Council) in the State of New Jersey."
Under date of September 6, 1948, the plaintiff addressed the following letter to his friend and successor, Grand Recording Secretary:
"My dear Friend Gizzi:
"I regret that I cannot return you the General Laws, for the reason that I need them from a legal point, however I am enclosing you herewith the cost so that you can replace them from Supreme Council.
"It makes no impression on me whether I remain in the order because they have already brought it into bankruptcy.
"The case for the investigation will have reaction and repercussion nationally.
"The American Press will make comments on the results of the investigation from the reports made by the accountants.
"The destinies of the order are in my hands. I shall be admired by the entire colony for having be (sic) able to expose the mysteries of the order, and for having exposed the rightfully destructures of the order, who knows how they will end legally.
 "Regards and many thanks
 "Avv. MICHAEL SIENA."
It has been said that the highest form of vanity is love of fame. We have italicized the expressions in the letter to reflect their bold and trenchant significance.
*514 The concluding paragraphs of the plaintiff's communication to the Supreme Council dated March 2, 1949, display the plaintiff's dejection and chagrin. We quote:
"The Supreme Council has permitted the nomination of lots of Supreme Delegates devoid of the rudiments of an elementary education and many others ignorant and common laborers. Why? All know the answer.
"All of you know the outcome of the sorrowful future of the entire Order, and that within your own hearts feel that the ailment being too chronic there is no antitoxin now available for its cure."
True, the burden of proof of bad faith devolved upon the defendant. Morris v. United Piece Dye Works, supra. True also, unless the demand to examine the accounts is made in good faith, the application will be denied. McMahon v. Dispatch Printing Co., supra; Vernam v. Scott, 12 N.J. Misc. 177 (Sup. Ct. 1934).
We recall the familiar statement of Justice Swayze in In re De Vengoechea, 86 N.J.L. 35 (Sup. Ct. 1914), that "the power to order an inspection of books is so great, its exercise may affect unfavorably so many innocent stockholders, and may cause such inconvenience or perhaps such ruinous results to a corporation * * * that the court ought to exercise the power with the greatest care and only when a case is presented which indicates not only a bona fide desire to safeguard the interests of all stockholders but a probability that the interests of all will be served by the proposed investigation."
We note incidentally that although there were at the time of the trial of this action more than 4,000 members of the Mortuary Benefit Fund, none united with the plaintiff in his endeavor.
We proceed to consider as well the evidence pertaining to the second phase of the case to which previous reference was made. The plaintiff subscribed to an application for membership to the Grand Lodge which contained the following declarations:
"V. That I have a precise knowledge of the Laws of the Order and of the Internal Rules of this Lodge and find them to be to my complete satisfaction.

* * * * * * *
*515 VIII. That I will obey and comply with the laws of the Order, the Decrees of its competent Authorities, the Internal Rules of this Lodge, as they are today or as they may be modified in the future.

* * * * * * *
X. That this application constitutes a formal contract between me, the Lodge, and the Order Sons of Italy in America."
As a member of a committee of five he proposed successfully for adoption by the membership of his district lodge the following article of its existing internal laws:
"Article 47. No brother is permitted, under pain of expulsion to go to the civil courts of law before he shall have appeared before the various grades of jurisdiction established by the Order. The present by-laws can not be annuled until ten years after the date of approval. Amendments may be proposed for specified reasons but in order to be approved they must be adopted by a two-thirds majority of those voting.
These by-laws have been compiled by a committee consisting of the following members.
1. Giuseppe Venezie
2. Avv. Michele Siena
3. S. Giuliano
4. G. Picone
5. G. Manfredi"
It suffices to state that there were and are tribunals, with rules and regulations governing the courses of procedure within the organic law of the association to which the plaintiff could have resorted in quest of the relief he sought. See, Exhibit, General Laws, Order Sons of Italy. It may be confidently inferred that the plaintiff was aware of the remedies available to him under the constitution and general laws of the association. He is an attorney at law, and we have noticed that in his letter of September 6, 1948, he informed the Grand Recording Secretary: "I regret that I cannot return you the General Laws, for the reason that I need them from a legal point * * *." Cf. Chew v. Manhattan Laundries, 134 N.J. Eq. 566 (E. & A. 1944).
It is observed that the plaintiff addressed his demand to the Grand Lodge on September 20, 1948, to the Supreme Lodge on October 28, 1948, and instituted the present action on December 9, 1948. The trial of the action began on May *516 18, 1950. Meanwhile there was an exchange of correspondence between the plaintiff, his attorney, and representatives of the Order. The communications distinctly reflect the attitude of the plaintiff.
It seems reasonable to suppose that the privilege sought by the plaintiff could only be afforded by the Supreme Council of the Grand Lodge. The plaintiff knew that the meetings of the Council were not frequent. The secretary informed him that "a plenary meeting of the Supreme Council will be held on Saturday and Sunday, March 5th-6th, 1949, at the Bellevue Stratford Hotel, Broad and Walnut Streets, Philadelphia, Pa., at 10 o'clock A.M." The plaintiff did not attend. It is incidentally noticeable that this opportunity to be heard by the Council preceded the trial of the action at law by more than a year.
In his acknowledgment of the receipt of the notice of the meeting of the Supreme Council, the plaintiff, inter alia. wrote:
"Regarding my appearance before the Supreme Council, it is not proper and fitting, at this time, as I am already in the Court of Law.
Therefore, the Supreme Session will have no problem to solve on the matter. * * *
They have allowed each state Lodge to establish its own Mortuary Fund Insurance, and they have allowed them to conduct it independently, at their will and pleasure, thus creating a rich milky cow where any one have had access to milk it and to live in opulence all of his life. Finally the cow has become too sterile and no longer productive. It is now useless to illustrate all the deplorable consequences derived through such a system.

* * * * * * *
If the Supreme Council had to adopt his (Lawyer Mezzatesta, 1917) system throughout the Order and to assess each of the then 1,000,000 members in the sum of $10.00 each, today the Order would have been just as prosperous and financially strong as the Metropolitan, Prudential etc. What is the Order financially today? NIL!"
In a communication addressed to the secretary of the Supreme Lodge, dated June 3, 1949, the plaintiff stated:
"I now call upon you as the spokesman for the National Supreme Lodge to make available to me the books for examination by me or my accountants, and if this is not done I will apply to a Federal Court for the same kind of relief I am asking in New Jersey."
*517 The Supreme Secretary replied:
"You will recall that you were invited to attend a meeting of the Supreme Council in Philadelphia, Pa., on March 6, 1949, to present your complaint. You failed to appear but wrote a very abusive letter instead.
In view of what you state the invitation for you to attend and present your case is hereby renewed, and you are advised that the next meeting of the Supreme Council will be held on September 28, 1949 at the Hotel Chelsea, Atlantic City, N.J., at noon."
The plaintiff testified at the trial: "I wrote the Supreme Lodge. I couldn't appear before them and prejudice my case."
It is a well-settled principle of the law of this State that even where property rights are involved, still if the laws and rules of the organization provide a remedy within that body and such rights are cognizable by the tribunals established within the order and the members have agreed to exhaust that remedy before resorting to the courts of law, the latter will not interfere until that available remedy has been exhausted. Ocean Castle v. Smith, 58 N.J.L. 545 (Sup. Ct. Ct. 1896); affirmed, sub nom. Smith v. Ocean Castle, 59 N.J.L. 198 (E. & A. 1896); Roxbury Lodge v. Hocking, 60 N.J.L. 439 (E. & A. 1897); Walsche v. Sherlock, 110 N.J. Eq. 223 (Ct. 1932); Dragwa v. Federal Labor Union, 136 N.J. Eq. 172 (Ch. 1945).
It is interesting to behold that the principle has been recognized and applied by our former Court of Errors and Appeals in a previous action implicating the Grand Lodge of the State of New Jersey, Order Sons of Italy in America. Purcaro v. Grand Lodge, &c., Sons of Italy, 107 N.J.L. 82 (E. & A. 1930).
It is realized that an immunity from the rule or principle arises where property rights are implicated and it is manifest that a resort to the remedies afforded by the association would be futile, illusory, or vain. Walsche v. Sherlock, supra.
We have made profuse references to the evidence in this case because our review implicates fundamentally the substantiality of the findings of fact of the trial judge to which the principles of law are to be applied.
*518 Our review of those material issues of fact to which we have particularly referred, made with due regard to the opportunity of the trial court to judge the credibility of the witnesses, and upon consideration of the weight of all of the relevant evidence, conducts us to the conclusion that the plaintiff did not make his application in good faith and did not first exhaust his available remedies, as he had agreed to do, in conformity with the organic laws of the Order. Nor is it made evident that a pursuit of his opportunities within the association would have been futile. Rules 1:2-20; 4:2-6.
The learned trial judge conceived that "the accounting and examination sought cannot hurt or harm the defendant." However, unless the application is clearly justified, the mandatory judgment does violence to the settled and well-established principles of law governing all such cases.
Our conclusions of fact necessitate a reversal of the judgment of the Law Division. In the circumstances of the present case the record is returned with directions to enter a judgment for the defendant. No costs.