OSTRER, J.A.D.
*72 This appeal involves the scope of a shareholder's right to inspect a corporation's records under N.J.S.A. 14A:5-28 and the common law. Plaintiff, a Merck & Co., Inc. shareholder, appeals from the *73 dismissal of his complaint seeking various Merck corporate records. We conclude his demand exceeds the scope of "books and records of account, minutes, and record of shareholders," which the court was empowered to permit him to inspect under N.J.S.A. 14A:5-28(4). Plaintiff also misreads a 1988 amendment to the statute, which allows a court to limit a shareholder's *875 inspection, rather than expand it as plaintiff contends. Finally, plaintiff misplaces reliance on the common law. We therefore affirm.
I.
As a prelude to a threatened shareholder derivative action, plaintiff R.A. Feuer, the owner of 288 shares of Merck stock, sought the production of twelve broad categories of documents from Merck. Feuer intended to search for evidence that Merck acted wrongfully when it rejected his previous demand that Merck's board of directors commence suit against itself and senior management responsible for Merck's acquisition of another pharmaceutical firm, Cubist Pharmaceuticals, Inc.
Feuer asserted the acquisition was ill-advised and reckless. He alleged Merck proceeded with the transaction although it knew certain Cubist patents were challenged, and it did not reserve the right to cancel the acquisition if Cubist lost the patent litigation. After a decision that invalidated some Cubist patents, but before the Merck-Cubist transaction closed, Feuer wrote to Merck's board, demanding it reconsider or renegotiate the deal; and if it did not, then to commence litigation against the board and responsible managers and advisors, to recover the damages that Feuer alleged Merck would suffer. Shortly after the transaction was complete, Feuer said in a second letter the board "should be held accountable to the Company for the difference between what Merck will be paying for Cubist and its current value ...."
In response to Feuer's demands, the board appointed a "Working Group" of three of its members to evaluate his demand, retain counsel, conduct an investigation, and recommend a response. Four months later, the Working Group's counsel informed Feuer *74 that "following a thorough and good faith investigation, the Board of Directors of Merck ... in the exercise of its business judgment, has rejected all of your demands with respect to the acquisition of Cubist Pharmaceuticals, Inc."
Feuer submitted seventeen questions to the attorney, inquiring about the criteria for selecting the Working Group, potential conflicts, and its internal operations. Dissatisfied with the lack of response, Feuer then wrote to the board to demand that the board sue the Working Group's counsel and his firm, alleging they aided and abetted the board's "underlying wrongdoing" and were "proceeding with an effort to 'whitewash it.' "
Several months after that, in another letter to the board, Feuer demanded the documents that lie at the heart of this appeal. He invoked his rights under N.J.S.A. 14A:5-28(4), but not the common law. He described twelve categories of "Merck's 'Books and Records' " pertaining generally to the Working Group's activities, communications, and formation; documents provided to the board regarding Cubist and two of its drugs before Merck's tender offer; and the board's consideration of Feuer's Demands and the Working Group's recommendations. Feuer demanded:
1. All documents requested and/or examined by the "Working Group" and/or its counsel in connection with Mr. Feuer's Demand Letters and/or the claims made therein.
2. All documents that refer or relate to the selection of counsel for the "Working Group."
3. All documents which refer or relate to internal "conflict checks" made by any of the lawyers considered for representation of the "Working Group."
4. All documents that refer or relate to the selection of the members of the *876 "Working Group," including any investigation regarding bias, conflicts and/or any other factors that might serve to disqualification [sic] of any such person from serving.
5. All documents which refer or relate to the manner in which interviews of witnesses by the "Working Group" and/or its counsel would be taken (i.e. under oath, recorded, transcribed, etc.).
6. All documents which refer or relate to the amount of time each of the members of the "Working Group" expended personally learning about and/or considering the claims made in the Demand Letters.
7. All documents which refer or relate to communications between or among any member of the "Working Group" or its counsel with any Board member (other *75 than Mr. Frazier) regarding the Demand Letters and/or the claims set forth therein.
8. All documents provided to the Board prior to the commencement of the tender offer for Cubist shares regarding Cubicin, Zerbaxa and Cubist generally.
9. All documents including emails and notes referring or relating to communications between ML & B and any of the counsel for the "Working Group."[1]
10. All documents which refer or relate to the meeting of the Board at which the demands made in the Demand Letters were rejected.
11. All documents which refer or relate to the amount of time the Board spent to consider the demands made at such meeting.
12. All minutes of the Board and/or the "Working Group" at which there was any discussion of the Demand Letters and/or the demands made therein.
After Feuer agreed to confidentiality restrictions, the board released to him pertinent minutes of the board and the Working Group. The board otherwise refused Feuer's demand.
Feuer's two-count complaint followed. Feuer alleged that he sought the documents for a proper purpose, because his demand was "reasonably related to his interests as a stockholder ... and his forthcoming commencement of a shareholder's derivative suit on behalf of Merck." In count one, Feuer sought documents responsive to his twelve demands pursuant to N.J.S.A. 14A:5-28 and the common law. In count two, he sought a declaratory judgment that Merck "wrongfully rejected" his demands in his three letters, and "that Merck and its Board, in failing to produce ... all the documents relating to the Board's investigation and rejection of Plaintiff's Demands, have failed to, and cannot, meet their burden of demonstrating that the Board's rejection of such Demands was made reasonably, in good faith, and with justification."
In lieu of an answer, Merck filed its motion to dismiss under Rule 4:6-2(e). The trial court granted the motion after oral argument. The court held that Feuer had a "proper purpose" under N.J.S.A. 14:5-28 in seeking the documents. But, the documents Feuer sought fell outside "books and records of account," and the common law did not expand the statutory inspection right.
*76 The court also concluded the declaratory judgment count did not set forth a cause of action because the statute deals with the production of documents, and if Merck wrongfully withheld a document, the remedy would have been to order its production.
*877 II.
We review de novo the trial court's order dismissing plaintiff's complaint, which raises a purely legal question as to the scope of a shareholder's inspection rights. See Verry v. Franklin Fire Dist. No. 1, 230 N.J. 285, 294, 166 A.3d 1140 (2017) (stating that "[i]n matters of statutory interpretation" appellate review is de novo); Rezem Family Assocs., LP v. Borough of Millstone, 423 N.J. Super. 103, 114, 30 A.3d 1061 (App. Div. 2011) (stating that appellate court reviews de novo a trial court order on a motion to dismiss under Rule 4:6-2(e) ).
A.
We consider first Feuer's contention that N.J.S.A. 14A:5-28(4) entitled him to the documents that Merck withheld. Our goal is to further the Legislature's intent, starting with its expression in the statutory language. DiProspero v. Penn, 183 N.J. 477, 492, 874 A.2d 1039 (2005). If the language is clear, our task is done; and, if it is not, we may resort to extrinsic materials. In re Kollman, 210 N.J. 557, 568, 46 A.3d 1247 (2012). We reviewed the background and meaning of N.J.S.A. 14A:5-28 in Cain v. Merck & Co., 415 N.J. Super. 319, 1 A.3d 834 (App. Div. 2010) ; however, that case pertained to a request for certain minutes of the board and executive committees.
Subsection four of N.J.S.A. 14A:5-28 must be read in the context of the preceding three subsections. See DiProspero, 183 N.J. at 492, 874 A.2d 1039 (stating that words and phrases must be read in context with related provisions). The first subsection requires corporations to maintain "books and records of account and minutes of the proceedings of its shareholders, board and executive committee, if any," and its record of shareholders.
*77 N.J.S.A. 14A:5-28(1). The next subsection entitles any shareholder to obtain a corporation's "balance sheet as at the end of the preceding fiscal year, and its profit and loss and surplus statement for such year." N.J.S.A. 14A:5-28(2). The third subsection defines inspection rights of shareholders who have held their shares for six months, or own five percent of the corporation's total shares. They are entitled, upon a showing of "any proper purpose," to the "minutes of the proceedings of its shareholders" and its "record of shareholders." N.J.S.A. 14A:5-28(3).
Finally, the statute-rather than directly entitle any shareholder to inspect documents-preserves the court's power to grant inspection to shareholders, irrespective of their time or percentage of ownership, for a proper purpose. See Cain, 415 N.J. Super. at 330, 1 A.3d 834 (stating that subsection four "continues the court's common law power to allow inspection of the specific corporate documents"). However, such inspection pertains only to "books and records of account, minutes and record of shareholders of a corporation." N.J.S.A. 14A:5-28(4). Subsection four's first sentence states:
Nothing herein contained shall impair the power of any court, upon proof by a shareholder of proper purpose, irrespective of the period of time during which the shareholder shall have been a shareholder of record, and irrespective of the number of shares held by him, to compel the production for examination by such shareholder of the books and records of account, minutes, and record of shareholders of a corporation.
[ Ibid. ]
The subsection then authorizes the court to limit or condition such access, stating: "The court may, in its discretion prescribe any limitations or conditions with reference to the inspection, or award any other *878 or further relief as the court may deem just and proper." Ibid. The rest of the subsection empowers the court to order a corporation to bring into the State and keep in the State "books, documents and records, pertinent extracts therefrom," and allows a court to proceed summarily in any action for inspection. Ibid. *78 The plain language of subsection four's first sentence authorizes inspection of a significantly narrower universe of corporate records than Feuer demanded. Feuer does not seek a "record of shareholders," and Merck disclosed minutes of both the board's and Working Group's meetings. As used in subsection four, "minutes" refers to "shareholder, board, and executive committee minutes referred to in subsection (1)." Cain, 415 N.J. Super. at 331, 1 A.3d 834. Minutes record a meeting, but do not necessarily encompass documents presented at the meeting. See Pederson v. Arctic Slope Reg'l Corp., 331 P.3d 384, 399 (Alaska 2014). Feuer does not contend that he is entitled to the demanded documents pursuant to the right to inspect minutes, notwithstanding that he requested "All documents which refer or relate to the meeting of the Board at which the demands made in the Demand Letters were rejected."
Also, "books and records of account" consist of accounting or financial documents. Id. at 397-98 (stating the "books and records of account" under corporation law include detailed accounting and executive compensation records). That is consistent with the phrase's common meaning. See Black's Law Dictionary 207, 1504 (9th ed. 2009) (equating "books of account" with "shop books," which are "[r]ecords of original entry maintained in the usual course of a business by a shopkeeper, trader or other business person"); Wilson v. Wilson, 6 N.J.L. 95 (Sup. Ct. 1822).
The phrase "books and records of account" does not encompass any and all records, books, and documents of a corporation. See Susquehanna Corp. v. Gen'l Refractories Co., 250 F.Supp. 797, 801 (E.D. Pa. 1966) (applying Pennsylvania law and stating "books or records of account" excludes "records of another corporation whose acquisition is contemplated" and "the proposed contract"); State ex rel. Jones v. Ralston Purina Co., 358 S.W.2d 772, 778 (Mo. 1962) (holding that statutory right to inspect corporation's "books" did not include "analyses or tentative studies," which were "in the nature of confidential inter-office communications" and prepared solely for management's information). The *79 phrase does not necessarily encompass all financial documents of a corporation. See Bitters v. Milcut, Inc., 117 Wis.2d 48, 343 N.W.2d 418, 419 (Wis. Ct. App. 1983) (construing "books and records of account" narrowly, to exclude corporation's "interim profit and loss statements").
Notably, the phrase "books and records of account" appears not only in the fourth paragraph, which describes inspection rights, but also in the first paragraph, which describes the corporation's record-keeping obligation. We must presume the phrase means the same in both subsections absent a clear indication to the contrary. Oldfield v. N.J. Realty Co., 1 N.J. 63, 69, 61 A.2d 767 (1948). If we expansively define the universe of documents subject to inspection under subsection four, we must do the same regarding the universe of documents that the corporation is required to keep in the first place. Reading the statute sensibly, it does not impose such a vaguely defined record-keeping obligation on corporations, nor does it grant courts the power to grant an equally vague scope of inspection to shareholders.
In contrast to subsection four's first sentence, the third sentence refers to *879 the court's power to order a corporation to bring into the State "books, documents and records." N.J.S.A. 14A:5-28(4). "Books" and "records" in that sentence are not limited to those of account; and "documents" are included as well. Had the Legislature intended "books and records of account" in the first sentence to mean books and records and documents generally, it would have said so, as it did in the third sentence. "[W]here the Legislature has carefully employed a term in one place and excluded it in another, it should not be implied where excluded." GE Solid State, Inc. v. Dir., Div. of Taxation, 132 N.J. 298, 308, 625 A.2d 468 (1993) ; Cain, 415 N.J. Super. at 331, 1 A.3d 834 (interpreting N.J.S.A. 14A:5-28).[2] *80 Feuer also contends his right to the withheld documents derives from the following highlighted language in subsection four's second sentence: "The court may, in its discretion prescribe any limitations or conditions with reference to the inspection, or award any other or further relief as the court may deem just and proper." N.J.S.A. 14A:5-28(4) (emphasis added). The sentence was added by amendment in 1988, along with the balance of the subsection.
The apparent purpose of the sentence was to restrict access and provide other relief to a corporation. According to its plain language, the section empowers the court to restrict or burden inspection. As we stated in Cain, "The New Jersey Legislature has expressly recognized the court's power to circumscribe the scope of inspection, stating that '[t]he court may, in its discretion prescribe any limitations or conditions with reference to the inspection, or award any other or further relief as the court may deem just and proper.' " 415 N.J. Super. at 334-35, 1 A.3d 834 (quoting N.J.S.A. 14A:15-28(4) (emphasis added) ); see also Stuart L. Pachman, Title 14A Corporations, cmt. to 14A:5 at 239 (2018) (stating that the amendment "expressly authorized a court to exercise discretion to limit or condition inspection rights" such as requiring consent to a confidentiality agreement).
*81 Furthermore, Feuer's reading would render subsection four's first sentence surplusage-a disfavored reading. See In re Attorney General's Directive, 200 N.J. at 297-98, 981 A.2d 64. There would be no need to preserve a court's power to order inspection of certain documents under certain conditions, if the court could also grant shareholders whatever inspection it deemed "just and proper."
Finally, we reject Feuer's argument that we should broadly interpret subsection four to help him assess whether he has a well-founded derivative claim. If he proceeded with a derivative action, Feuer *880 would need to satisfy particularized pleading requirements. See N.J.S.A. 14A:3-6.5(3) ("If a derivative proceeding is commenced after a determination has been made rejecting a demand by a shareholder, the complaint shall allege with particularity facts establishing that a majority of the board of directors, or all members of a committee, which in either case determined the matter, did not consist of independent directors at the time the determination was made."); R. 4:32-3. He would also need to be prepared for a potential motion to dismiss. See In re PSE&G S'holder Litig., 173 N.J. 258, 283, 801 A.2d 295 (2002) (stating that a corporation may move to dismiss a derivative suit based on a special litigation committee's finding that a suit was not in the corporation's best interests).
Within a derivative action, a plaintiff-shareholder may be entitled to "discovery 'limited to the narrow issue of what steps the directors took to inform themselves of the shareholder demand and the reasonableness of its decision' " to reject it. Id. at 286, 801 A.2d 295 (quoting In re PSE & G S'holder Litig., 315 N.J. Super. 323, 337, 718 A.2d 254 (Ch. Div. 1998), aff'd, 173 N.J. 258, 801 A.2d 295 (2002) ). Under N.J.S.A. 14A:3-6.5(5)(c), enacted after the Supreme Court's PSE & G decision, see L. 2013, c. 42, the Legislature conditioned such pre-motion discovery. Plaintiff must make "a good cause showing of alleged facts which evidence a lack of independence by the person or group making the determination *82 for the corporation or a lack of good faith determination."[3] As a small shareholder, Feuer would also need to post security for Merck's reasonable expenses. N.J.S.A. 14A:3-6.8 (requiring security by plaintiff holding shares with less than $250,000 in market value, and less than five percent of the outstanding shares of any class).[4]
Some courts have encouraged derivative plaintiffs to utilize state inspection statutes before commencing suit. See, e.g., King v. VeriFone Holdings, Inc., 12 A.3d 1140, 1145 (Del. 2011) (stating that Delaware courts strongly encourage shareholder-plaintiffs to utilize inspection rights before filing a derivative suit to meet demand futility pleading requirements under Delaware rules). In In re Johnson & Johnson Derivative Litig., 865 F.Supp.2d 545, 580-81 (D.N.J. 2011), upon which Feuer relies, the district court dismissed a derivative action without prejudice, based on the possibility that the plaintiff might be able to meet heightened pleading requirements after pursuing an inspection action under N.J.S.A. 14A:5-28.[5]
However, Feuer is not entitled to broad-ranging inspection under the statute just because it would be useful, or because he prefers it to discovery within a derivative *881 action. We are bound by *83 the plain language of the statute. Furthermore, it would defeat the purpose of the security requirement in N.J.S.A. 14A:3-6.8, and the preliminary showing requirement in N.J.S.A. 14A:3-6.5(5)(c), if plaintiff were able to secure equivalent "discovery" through N.J.S.A. 14A:5-28.
In sum, Feuer's document demands exceed the scope of inspection that the statute authorizes.
B.
Alternatively, Feuer contends that even if subsection four does not compel the inspection he seeks, he is entitled under the common law to inspect the demanded documents. "New Jersey common law recognized a qualified right of a shareholder to examine the books and records of the corporation where the request to inspect was made in good faith and for a purpose germane to the applicant's status as a shareholder." Cain, 415 N.J. Super. at 328, 1 A.3d 834 (citing Siena v. Grand Lodge of N.J., O.S.I., 11 N.J. Super. 507, 511, 78 A.2d 610 (App. Div. 1951) and Pilat v. Broach Sys., Inc., 108 N.J. Super. 88, 95, 260 A.2d 13 (Law Div. 1969) ).
The common law created an inspection right that is simultaneously both broader and more restrictive than the statutory right created in our modern act. It is not necessarily limited to documentary categories specified in the statute. See, e.g., Kemp v. Sloss-Sheffield Steel & Iron Co., 128 N.J.L. 322, 322, 26 A.2d 70 (Sup. Ct. 1942) (in addition to "books of account," authorizing inspection of "records, contracts, federal reports, and other data of the respondent corporation as to the assets, liabilities, contract operations and practices and the administration of the affairs of the corporation").
Yet, as we noted in Cain, a requesting shareholder had to prove good faith and a germane purpose. Also, "although a shareholder did not have to prove actual mismanagement before gaining access ... a shareholder seeking to examine corporate books and records generally came forward with facts to substantiate the concern *84 about mismanagement." Cain, 415 N.J. Super. at 333, 1 A.3d 834 (citing Kemp, 128 N.J.L. at 323-24, 26 A.2d 70 ; Vernam v. Scott, 12 N.J. Misc. 177, 181, 171 A. 171 (Sup. Ct. 1934) ; and McMahon v. Dispatch Printing Co., 101 N.J.L. 470, 472-73, 129 A. 425 (Sup. Ct. 1925) ). A shareholder also needed to demonstrate "a probability that the interests of all will be served by the proposed investigation," at least where the minority shareholder's request would impose extensive costs on the corporation. In re De Vengoechea, 86 N.J.L. 35, 37, 91 A. 314 (Sup. Ct. 1914).
Furthermore, the relief, which was historically secured by a writ of mandamus, see, e.g., Kemp, 128 N.J.L. at 322, 26 A.2d 70, was discretionary. See Switz v. Middletown, 23 N.J. 580, 587-89, 130 A.2d 15 (1957) (describing discretionary nature of writ of mandamus). The pre-1947 Supreme Court held that the limited statutory "right" to inspect stock and transfer books under L. 1898, c. 172, § 33, was still subject to the exercise of the court's discretion. State ex rel. O'Hara v. Nat'l Biscuit Co., 69 N.J.L. 198, 199-200, 54 A. 241 (Sup. Ct. 1903). Thus, despite the statutory grant, a requesting shareholder was not assured of inspection. See 5A Fletcher, Cyclopedia Corporations, § 2214, p. 247 (permanent ed.) ("Even at common law, the writ of mandamus would not issue as a matter of course ...."). In support of the Model Act upon which our statute is based, its drafters observed, "Apparent statutory efforts to create absolute inspection rights, irrespective of purpose, have in large part been weakened by courts, which find an implied purpose requirement or invoke the *882 discretionary nature of mandamus to refuse relief." 2 Model Business Corporation Act Annotated, cmt. 4 to § 46 at 127 (1960).
Merck contends that adoption of N.J.S.A. 14A:5-28 abrogates the common law, to the extent subsection four does not expressly preserve it. Courts of other states are split over whether their inspection statute, based on a version of the Model Business Corporation Act, abrogates the common law. See generally Browning Jeffries, Shareholder Access to Corporate Books and Records: The Abrogation Debate, 59 Drake L. Rev. 1087 (2011) (generally *85 favoring the "minority view" that the statute abrogates common law); Fletcher, § 2214 at 252 ("It is the general rule ... that the common-law right applies to the books and records not specified or included within the statutory provision.").[6]
Interpretative maxims are at odds. Based on "expressio unius est exclusio alterius," Merck argues the statute preserved only a limited common law right to "books and records of account, minutes, and record of shareholders," to the exclusion of other common law rights. Also, "[l]egislative enactments are never subservient to the common law when the two are in conflict with each other." Farmers Mut. Fire Ins. Co. of Salem v. N.J. Prop.-Liab. Ins. Guar. Ass'n, 215 N.J. 522, 545, 74 A.3d 860 (2013). On the other hand, statutes in derogation of the common law are strictly construed. Marshall v. Klebanov, 188 N.J. 23, 37, 902 A.2d 873 (2006). Ultimately, no one maxim is dispositive. See 612 Assocs., LLC v. N. Bergen Mun. Utils. Auth., 215 N.J. 3, 18, 71 A.3d 749 (2013) (cautioning reliance on the "expressio unius" maxim should not subvert the quest to determine legislative *86 intent); Farmers Mut. Fire Ins. Co. of Salem, 215 N.J. at 546, 74 A.3d 860 (stating that rule regarding strict construction of statutes in derogation of the common law should "not be permitted to defeat the obvious purpose of the legislature").
Nonetheless, there would be no apparent reason for the statute to preserve common law rights, as delineated in subsection four, if common law rights beyond those survived regardless of the savings provision. We observed in Cain that the statute "continues the court's common law power to allow inspection of the specified documents...." Cain, 415 N.J. Super. at 330, 1 A.3d 834 (emphasis added). Had the *883 Legislature intended to preserve the entire body of common law rights, it could have expressly said so. For example, the Open Public Records Act provides, "[N]othing contained in P.L.1963, c.73 (C.47:1A-1 et seq.), as amended and supplemented, shall be construed as affecting in any way the common law right of access to any record ...." N.J.S.A. 47:1A-1.
The enactment of New Jersey's modern Business Corporation Act, L. 1968, c. 350, differed markedly from the previous limited statutory right of inspection of stockholder records. See R.S. 14:5-1 (repealed), 14:10-5 (repealed).[7] Common law rights were unabridged by the old limited statute. Drake v. Newton Amusement Corp., 123 N.J.L. 560, 563, 9 A.2d 636 (Sup. Ct. 1939).
However, the drafters of section 46 of the 1960 Model Business Corporation Act, upon which New Jersey's statute is based, expressed the intention to craft a "comprehensive" statute. Referring to the third unnumbered paragraph of section 46-comparable to N.J.S.A. 14A:5-28(3) -the drafters stated:
While retaining the proper purpose requirement, the Model Act affords comprehensive protection to shareholder inspection rights. If a shareholder meets either the time or percentage of holding requirements and has stated a proper purpose in his written demand he is entitled to inspect all books which the corporation is obligated to keep unless an improper purpose can be shown. To enforce this right, *87 petitioner may enlist the aid of a court to compel production of books and records and institute an action for penalties against the corporation.[8 ]
[Model Business Corporation Act Annotated, cmt. 4 to § 46 at 127-28 (emphasis added).]
Regarding the precursor of our subsection four, the Model Act's drafters stated, "The Model Act also preserves to the court its power, even if petitioner fails to satisfy either the time or percentage of holding requirements, to compel production of the books and records in a proper case." Id. at 128.
One may conclude that a "comprehensive" statute is intended to occupy the field, and supplant a coexisting common law inspection regime outside the statute. The Fourth Circuit affirmed the district court's view that the "comprehensive" statutory inspection scheme in Maryland law supplanted the common law:
This comprehensive statutory scheme was intended to strike a delicate balance between a shareholder's right to inspect his company's records and management's need to conduct day to day business without undue interference. To resurrect ancient rules regarding the precise subject matter the legislature has sought to regulate would be to run the risk of tipping the balance one way or the other.
[ Caspary, 560 F.Supp. at 857.]
See also Shareholder Access, 59 Drake L. Rev. at 1128-32.
In the final analysis, however, we need not decide whether the residual common law is abrogated by *884 N.J.S.A. 14A:5- 28. We are satisfied that, assuming for argument's sake that the common law survives alongside the statutory rights, it provides no relief under the facts and circumstances of this case. As we have noted, a shareholder seeking common law relief was obliged to prove good faith, a germane purpose, and "facts to substantiate the concern about mismanagement." Cain, 415 N.J. Super. at 333, 1 A.3d 834.
The pre-1947 Supreme Court held that the bare allegation that a corporation paid excessive prices for certain acquisitions-a *88 charge similar to Feuer's claims about Merck's Cubist acquisition-was not enough to justify a common law inspection. "The charge that the company has acquired various other banana plantations at excessive prices imputes at most only bad judgment to the responsible officers, and not necessarily even that." De Vengoechea, 86 N.J.L. at 38, 91 A. 314. It did not reflect "mismanagement." Ibid.
We discern an additional aspect of our jurisprudence. The extent of a petitioner's holdings appears to be a significant factor in balancing the corporation's burden of compliance with the shareholders' interest in inspection. A petitioner who directly and indirectly controlled 100 out of 201 shares outstanding in a hardware supply company was granted access to its "books, records and papers" "to determine whether there ha[d] been proper management and to ascertain the value of his shareholdings for the purpose of sale." Wyckoff v. Hardware Supply Co., 134 N.J.L. 172, 174, 46 A.2d 669 (Sup. Ct. 1946). Likewise, the holder of 216 out of 597 preferred shares, and 240 out of 972 common shares of a corporation that operated a movie theatre in Newton was entitled to inspect the "corporation's books and records" to ascertain whether there had been prudent management, particularly in light of concerns that dividends were improperly paid. Drake, 123 N.J.L. at 561, 9 A.2d 636. Similarly, the owners of over five percent of the common stock of a steel company were entitled to inspect "books of account, records, contracts, federal reports, and other data" to ascertain whether the company was properly managed, particularly in light of evidence of suspicious transactions and potential self-dealing involving the controlling shareholder and another firm it controlled. Kemp, 128 N.J.L. at 322-24, 26 A.2d 70.
By contrast, the court in De Vengoechea, while stating that a shareholder's small holdings was of "no importance," nonetheless weighed heavily the impact of the petitioner's extensive inspection demands on United Fruit Company, and required the petitioner to show a "probability" that his investigation would serve all shareholders:
*89 The fact that his holdings of stock are small compared with the whole amount outstanding is of course of no importance. It is the duty of the courts in a proper case to protect minority stockholders, but the power to order an inspection of books is so great, its exercise may affect unfavorably so many innocent stockholders, and may cause such inconvenience or perhaps such ruinous results to a corporation whose operations are so extensive in two continents that the court ought to exercise the power with the greatest care and only when a case is presented which indicates not only a bona fide desire to safeguard the interests of all stockholders but a probability that the interests of all will be served by the proposed investigation.
[ De Vengoechea, 86 N.J.L. at 37, 91 A. 314.]
See also Fulle v. White Metal Mfg. Co., 13 N.J. Misc. 591, 593, 180 A. 231 (Sup. Ct. 1935) (applying De Vengoechea in denying inspection); Vernam, 12 N.J. Misc. at 180-81, 171 A. 171 (same);
*885 McMahon, 101 N.J.L. at 471, 129 A. 425 (same). Applying De Vengoechea, and contrasting Wyckoff, Drake and Kemp, Feuer falls short of demonstrating a probability that all shareholders would be served by his proposed inspection.
Furthermore, we discern no basis in the common law cases for the kind of specific inspection Feuer generally seeks. As we have noted, the common law cases refer to inspections of stockholder information, books and records of account, sometimes more generally "books and records," and sometimes contracts and other financial data.
Feuer largely demands documents he himself prompted the corporation to create. He first demanded that Merck sue its directors, officers and advisors because they "recklessly proceeded" with the Cubist transaction. Then, he sought inspection of various documents the corporation generated as it considered and rejected his demand. That inspection demand is one significant step removed from a shareholder's demand for documents prepared in the usual course pertaining to the corporation's management or suspected mismanagement. Aside from his eighth demand, Feuer does not seek documents related to the Cubist transaction itself, which would be more akin to inspections our courts have authorized under the common law.
We are aware of no case, and Feuer has pointed to none, in which a shareholder effectively forced the creation of documents *90 upon his or her allegation of mismanagement, and then obtained a right to inspect those very documents. It is not for us to expand the common law-to the extent it applies at all-to recognize a right to inspect documents that did not exist, but for the requester's initial demands. Coyle v. Englander's, 199 N.J. Super. 212, 226, 488 A.2d 1083 (App. Div. 1985) (stating that "[d]evelopment of policy is for the Supreme Court").
C.
[At the direction of the court, the published version of this opinion omits the court's discussion of the trial court's dismissal of the declaratory judgment claim. See R. 1:36-3.]
Affirmed.

"ML & B" refers to Merck's regular counsel, Morgan, Lewis & Bockius.

We are unpersuaded by the contrary view, adopted by the Oregon Supreme Court, which holds that "books and records of account" should be given a "broad and liberal construction so as to extend to all records, contracts, papers and correspondence to which the common law right of inspection of a stockholder may properly apply." Meyer v. Ford Indus., Inc., 272 Or. 531, 538 P.2d 353, 358 (1975). The Oregon court candidly eschewed the " 'ordinary' " or "literal" reading of the phrase. Ibid. However, we are obliged to "ascribe to the statutory words their ordinary meaning and significance." DiProspero, 183 N.J. at 492, 874 A.2d 1039. Also, under Meyer, the words "of account" become meaningless surplusage. Yet, "[w]e must presume that every word in a statute has meaning and is not mere surplusage ...." In re Attorney General's "Directive on Exit Polling: Media & Non-Partisan Pub. Interest Grps.", 200 N.J. 283, 297-98, 981 A.2d 64 (2009) ; Velazquez v. Jiminez, 172 N.J. 240, 256, 798 A.2d 51 (2002) ("All terms in a statute should be accorded their normal sense and significance."). As we discuss below, it is a separate question whether a court retains the common law power to order inspection of documents other than those subsection four specifies.

We do not address whether the statute's limitation on discovery infringes upon the Court's exclusive jurisdiction over practice and procedure in the courts. See N.J. Const. Art. VI, § 2, ¶ 3 ; State ex rel. N.H., 226 N.J. 242, 256, 141 A.3d 1178 (2016) (relying on Court's power under paragraph 3 to "regulate the discovery practice in juvenile proceedings"); see also Winberry v. Salisbury, 5 N.J. 240, 255, 74 A.2d 406 (1950) (explaining that "the rule-making power of the Supreme Court is not subject to overriding legislation, but that it is confined to practice, procedure and administration").

Feuer holds roughly one ten-millionth of Merck's 2.7 billion outstanding shares of common stock, with a market value of less than one tenth the requisite $250,000.

Notably, the district court expressed no opinion about the plaintiff's likely success in a books and records action, but stated, "[i]t is, ultimately, left to the state court's discretion to 'prescribe any limitations or conditions with reference to the inspection....' " Ibid. (quoting N.J.S.A. 14A:5-28(4) ).

For the view that the common law inspection right survives, see, e.g., Rockwell v. SCM Corp., 496 F.Supp. 1123, 1126 (S.D.N.Y. 1980) ; Tucson Gas & Elec. Co. v. Schantz, 5 Ariz.App. 511, 428 P.2d 686, 690 (1967) ; Rainbow Navigation, Inc. v. PanOcean Navigation, Inc., 535 A.2d 1357, 1359 (Del. 1987) ; Parsons v. Jefferson-Pilot Corp., 333 N.C. 420, 426 S.E.2d 685, 688-89 (1993) ; Schwartzman v. Schwartzman Packing Co., 99 N.M. 436, 659 P.2d 888, 891 (N.M. 1983) ; Danzinger v. Luse, 103 Ohio St.3d 337, 815 N.E.2d 658, 660 (2004). For the contrary view, see, e.g., Perilstein v. United GlassCorp., 213 F.R.D. 252, 255-56 (E.D. Pa. 2003) ("[Pennsylvania, Georgia and Kentucky] now ha[ve] a statutory scheme that clearly abrogates any such hypothesized common law right."); Caspary v. La. Land & Exploration Co., 560 F.Supp. 855, 857 (D. Md.), aff'd, 707 F.2d 785 (4th Cir. 1983) ; Bitters v. Milcut, Inc., 117 Wis.2d 48, 343 N.W.2d 418, 420 (Wis. Ct. App. 1983) (stating that "vitality" of common law rule was "significantly diminished by subsequent statutory amendments"). In some cases, decisions in the former category may be attributed to a different statutory formulation, which, unlike New Jersey's statute, expressly preserves the common law generally. See, e.g., Parsons, 426 S.E.2d at 688-89 (noting that the official comment to section 16.02(e) of North Carolina's version of the Business Corporation Act states "that the right of inspection granted by section 16.02 ... is not a substitute for or in derogation of rights of inspection that may exist ... as a 'common law' right of inspection....").

See also R.S. 14:5-2 (repealed) (empowering courts to order corporations to bring into the state "any or all of the books of a corporation").

New Jersey declined to adopt the penalty provision, notwithstanding that the Model Act's drafters stated that the "primary purpose of inspection legislation (aside from some clarification) is to prescribe penalties which should make it unlikely that any reasonable requests will be refused"). Id. at 127.